The PEOPLE of the State of
Colorado, Petitioner,

v.

Robert Allen
SCHOONDERMARK, Respondent.

No. 85SC503.

Supreme Court of Colorado,
En Banc.

July 18, 1988.
Rehearing Denied Aug. 8, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Patricia Clark, Robert M. Petrusak, Asst. Attys. Gen., Denver, for petitioner.

David F. Vela, State Public Defender, Claire Levy, Sp. Deputy State Public Defender, Boulder, for respondent.

LOHR, Justice.

This case presents a question of whether certain evidence used to convict the defendant, Robert Allen Schoondermark, on charges of dispensing a dangerous drug (amphetamine) and possession and use of a dangerous drug (psilocybin) was obtained in violation of his right to be secure against unreasonable searches and seizures, as guaranteed by the fourth and fourteenth amendments to the United States Constitution. The trial court permitted certain materials seized from the defendant's residence by law enforcement officers to be introduced into evidence at his jury trial in Larimer County District Court. On appeal, the Colorado Court of Appeals reversed the defendant's convictions, holding that the materials in question had been discovered during an illegal entry into the defendant's house and that they should have been excluded from evidence notwithstanding that a search of the premises was conducted pursuant to a valid search warrant shortly after the illegal entry. *People v. Schoondermark*, 717 P.2d 504 (Colo.App.1985). We granted certiorari to determine whether the challenged evidence should have been admitted at trial. We conclude that under *Murray v. United States*, — U.S. —, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), the valid warrant provided an independent source for the evidence in question if the decision to seek the warrant was not prompted by what was observed during the illegal entry. We therefore reverse the judgment of the court of appeals and remand this case for further proceedings consistent with this opinion.

## I.

The evidence presented at the suppression hearing revealed the following sequence of events. On February 14, 1980, Grace Freeman contacted the Fort Collins police department. She spoke with Detective Clingan and informed him that a large number of drug transactions had been taking place at the house her estranged husband shared with a female roommate and the defendant. Freeman stated that she and her ex-husband were involved in litigation over the custody of their son and that she was concerned about drug activity because of the time that the child spent at the father's home. Detective Clingan asked her if she would be willing to purchase drugs at the house as an undercover agent, and she agreed.

Freeman arranged to purchase some cocaine from the defendant on February 29, 1980. She met Detective Clingan at the police department at approximately 5:00 p.m. that evening and phoned the defendant to confirm that she could purchase a half gram of cocaine. Police officers searched Freeman and her car to assure that she had no drugs in her possession and gave her fifty dollars in marked bills. She then drove to the defendant's house and went inside for approximately fifteen minutes. The defendant told her that he had not been able to obtain the cocaine, but that he expected the arrival of a large shipment later that night. She asked what else he had, and he offered to sell her a gram of speed for twenty dollars. Freeman agreed and exchanged the money for an envelope containing white powder. She left the house and drove to a nearby parking lot where Detective Clingan and another officer were waiting. Freeman gave them the remaining money and the envelope and told the officers about the transaction. Freeman also reported that Schoondermark had appeared intoxicated, and she expressed concern about the safety of a young child who had been present in the room with Schoondermark.

Based upon the information provided by Freeman, Detective Clingan decided to arrest the defendant immediately, and Clingan and three other officers approached the house. As they did so, the defendant, another adult male and a child left the house, and the defendant attempted to lock the front door. The officers spoke to the defendant and he identified himself. Detective Clingan then placed him under arrest, made a cursory search of his person for weapons, and handcuffed him. At that point, allegedly because of the extreme cold and the presence of the small child, Clingan directed the officers to take the subjects back into the house, specifically advising the officers not to look beyond the living room. The officers then searched

Schoondermark and discovered in his wallet the marked twenty dollar bill they had given to Freeman. Clingan also noticed paraphernalia in plain view on a coffee table in the living room, including two scales, a mirror, a hollow Bic pen casing, and some marijuana seeds.[1] Detective Clingan conducted a walk-through search of the house to determine if anyone else was present and left two officers to secure the residence while he drafted an affidavit and applied for a search warrant. The affidavit for the search warrant contained no reference to any materials seen in the house.

Approximately two and one-half to three hours after the arrest, Clingan returned with a search warrant. The officers then seized the paraphernalia discovered on the coffee table in the living room. They also searched the rest of the house and seized some items of identification and some plant-like material, later identified as psilocybin, from a desk. The substance Freeman obtained from Schoondermark was later tested by the police and identified as amphetamine.

The district attorney filed an information in Larimer County District Court which, as later amended, charged Schoondermark with dispensing a dangerous drug, amphetamine, in violation of sections 12–22–404 and –412, 5 C.R.S. (1973), and possession and use of a dangerous drug, psilocybin, in violation of the same statutes. The defendant moved to suppress all the evidence seized from the house. As relevant to the issues before us on certiorari review, the defendant contended that the items of evidence found on the coffee table before the search warrant was obtained had to be suppressed because they were discovered as a result of an illegal entry and search. The trial court held an evidentiary hearing and ruled that the police conduct that preceded issuance of the warrant did not taint the ultimate search of the premises pursuant to the warrant and that as a result, the materials found on the coffee table were admissible in evidence. The evidence was received at trial, the jury found the defend-

ant guilty of both charges, and the trial court entered a judgment of conviction.

Schoondermark appealed from the judgment and the court of appeals reversed, holding that the trial court erred in admitting evidence that was the product of an illegal search and seizure. The court of appeals determined that there were no exigent circumstances justifying the warrantless entry into the defendant's home, and rejected the argument that the evidence discovered on the coffee table was properly admitted despite the illegality because it would inevitably have been discovered. *People v. Schoondermark,* 717 P.2d at 505–06. Relying on the analysis in *United States v. Griffin,* 502 F.2d 959 (6th Cir. 1974), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974), the court concluded that:

> the inevitable discovery rule is inapplicable to rehabilitate evidence which has been seized during a search conducted in violation of a defendant's Fourth Amendment rights. To hold otherwise would justify, if not encourage, warrantless searches. To allow admission of evidence seized in an illegal search on the theory that proper execution of a search warrant would have disclosed the seized evidence would emasculate the search warrant requirement of the Fourth Amendment and would eviscerate the exclusionary rule. It would authorize the police to circumvent the magistrate which the United States Constitution interposes, as a safeguard, between the exercise of governmental power and the rights of the citizenry.

717 P.2d at 506. The court of appeals also rejected the argument that admission of the plain view evidence was harmless error. The People then petitioned this court for certiorari, and we granted that petition in order to review whether the evidence should have been suppressed.

## II.

A warrantless search violates the fourth amendment unless it falls within one

---

**1.** The description of the items observed is based on evidence presented at the suppression hearing. Elsewhere in the record the description is somewhat different. The discrepancies are unimportant for the purpose of this opinion.

of the recognized exceptions to the warrant requirement. *Mincey v. Arizona,* 437 U.S. 385, 393–94, 98 S.Ct. 2408, 2413–14, 57 L.Ed.2d 290 (1978); *People v. Thiret,* 685 P.2d 193, 200–01 (Colo.1984). Exigent circumstances necessitating immediate police action, such as the threat of the immediate destruction or removal of evidence, justify a warrantless search or seizure if the search or seizure is also supported by probable cause. *People v. Turner,* 660 P.2d 1284, 1287 (Colo.1983); *McCall v. People,* 623 P.2d 397, 401–02 (Colo.1981). In this case, the People have conceded that the circumstances did not justify entering the defendant's home without a warrant and that the initial entry was unlawful. However, the People argue that despite this illegality, the evidence found on the coffee table would inevitably have been discovered when the search warrant was obtained and executed, and therefore the evidence was properly admitted by the trial court.

### A.

Resolution of the issue presented in this case requires an understanding of the exclusionary rule and the exceptions to that rule. The exclusionary rule is a judicially created remedy designed primarily to deter unlawful police conduct. *United States v. Calandra,* 414 U.S. 338, 347–48, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974). The rule requires that evidence that has been obtained in violation of the fourth amendment be suppressed from presentation in the government's case-in-chief. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed. 2d 559 (1980). The exclusionary rule applies both to the illegally obtained evidence itself and to the "fruit of the poisonous tree"—any other evidence derived from the primary evidence. *Nardone v. United States,* 308 U.S. 338, 340–41, 60 S.Ct. 266, 267–68, 84 L.Ed. 307 (1939); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 391–92, 40 S.Ct. 182, 182–83, 64 L.Ed. 319 (1920). However, not all derivative evidence must be suppressed. Courts are aware that the exclusion of probative evidence necessarily impairs the effective

functioning of the truth-finding process and have declined to "hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

Three doctrines, which have been labeled independent source, attenuation, and inevitable discovery, have been recognized as exceptions to the exclusionary rule and justify admission of evidence even though it is derived from information obtained in violation of the fourth amendment. Under the independent source exception, the unconstitutionally obtained evidence may be admitted if the prosecution can establish that it was also discovered by means independent of the illegality. *Silverthorne Lumber,* 251 U.S. at 392, 40 S.Ct. at 183; *People v. Madson,* 638 P.2d 18, 33 (Colo.1981). The attenuation doctrine provides that tainted evidence may be admitted if the prosecution can show that the connection between the initial illegality and the evidence has become so attenuated as to dissipate the taint. *Nardone v. United States,* 308 U.S. at 341, 60 S.Ct. at 267; *People v. Lee,* 630 P.2d 583, 591 (Colo. 1981), *cert. denied* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982). Under the inevitable discovery rule, evidence initially discovered in an unconstitutional manner may be received if that same evidence inevitably would have been obtained lawfully. *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

### B.

The People assert that the inevitable discovery exception justifies the admission of the challenged evidence. We agree that admission of the evidence was consistent with the defendant's fourth and fourteenth amendment rights, but rely instead on the independent source doctrine as delineated by the United States Supreme Court in *Murray v. United States,* — U.S. —, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). *Murray* involved a factual situation similar to the facts presented here and the holding

of that case is dispositive of the issue before us.[2]

In *Murray*, federal agents observed the defendants driving vehicles into and out of a warehouse. The vehicles were later lawfully seized and found to contain marijuana. After receiving this information, several agents forced their way into the warehouse. They observed numerous burlap-wrapped bales in plain view, but did not disturb the bales. The agents then went to obtain a warrant to search the warehouse. In applying for the warrant, they did not mention their entry into the warehouse and did not rely on the evidence observed there. After obtaining the warrant, the agents reentered the warehouse and seized 270 bales of marijuana and other evidence. The defendants were charged in federal district court with certain drug-related offenses. The court denied the defendants' motions to suppress evidence obtained as a result of the initial entry, and such evidence was admitted at the defendants' jury trial. The defendants were convicted. The First Circuit Court of Appeals held that the challenged evidence was properly received and affirmed the convictions. *United States v. Moscatiello*, 771 F.2d 589 (1st Cir.1985). The United States Supreme Court then granted certiorari.

The Supreme Court, in a majority opinion authored by Justice Scalia, discussed the origins of the independent source exception to the exclusionary rule and noted that:

> The dispute here is over the scope of this doctrine. Petitioners contend that it applies only to evidence obtained for the first time during an independent lawful search. The Government argues that it applies also to evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality. We think the Government's view has better support in both precedent and policy.

*Murray*, —— U.S. at ——, 108 S.Ct. at 2533. The opinion stated that "[s]o long as a later, lawful seizure is genuinely independent of an earlier, tainted one ... there is no reason why the independent source doctrine should not apply." *Id.* at ——, 108 S.Ct. at 2535. The Court pointed out that a search pursuant to a warrant would not be a genuinely independent source of the challenged evidence if the decision to seek the warrant was prompted by what was observed during the initial entry or if information obtained during that entry was relied upon by the magistrate in issuing the warrant. Since the district court did not explicitly find that the agents would have sought a warrant if they had not first entered the warehouse, the Court remanded the case for a determination of whether the search pursuant to the warrant was an independent source of the challenged evidence.

■ In the case before us, it is clear that the warrant was not based upon any information obtained during the initial entry into the house. However, the trial court did not determine whether the officers would have sought the warrant even if they had not entered the house and observed the incriminating evidence on the coffee table. The defendant points out that a search of the home was not necessary to obtain the evidence needed to prosecute him for dispensing amphetamine. Since the trial court's findings did not address whether the things observed during the initial entry affected the decision to obtain a warrant, the case must be returned to that court for further findings. In making these findings the trial court should allow the parties an opportunity to supplement the existing record with additional evidence, and the People must bear the burden of establishing by a preponderance of the evidence that the officers would have sought the warrant even absent the information gained by the initial illegal entry.

---

2. To the extent that the cases of *People v. Griffin*, 727 P.2d 55 (Colo.1986); *People v. Turner*, 660 P.2d 1284 (Colo.1983); and *People v. Barndt*, 199 Colo. 51, 604 P.2d 1173 (1980), can be read as contrary to *Murray v. United States* with respect to the fourth and fourteenth amendment issues discussed in this opinion, *Murray* is controlling and those earlier cases do not correctly state the law.

We reverse the judgment of the Colorado Court of Appeals and remand this case to that court with directions to remand it to the trial court for further proceedings consistent with the views set forth in this opinion.