The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Kimberly Lynne MORLEY,
Defendant–Appellee.

No. 00SA54.

Supreme Court of Colorado,
En Banc.

June 26, 2000.

Robert S. Grant, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff–Appellant.

Zimmerman & Sussman, LLC, Ann L. Sussman Denver, Colorado, Attorney for Defendant–Appellee.

Chief Justice MULLARKEY delivered the Opinion of the Court.

In this interlocutory appeal brought under C.A.R. 4.1 and section 16–12–102(2), 6 C.R.S. (1999), the prosecution challenges an order of the Adams County District Court suppressing evidence seized from the defendant's apartment by police pursuant to a valid search warrant. The trial court premised the suppression order on the occurrence of an unlawful, warrantless police entry preceding the search conducted under the authority of the search warrant. We reverse the order of the trial court suppressing the evidence

and remand for proceedings consistent with this opinion.

### I.

In July 1998, officers from the Thornton Police Department arranged an undercover drug transaction. Under the direction of the officers, two informants entered the residence of the defendant, Kimberly Lynne Morley (Morley), and purchased methamphetamine from Robert Pigg (Pigg) and Dennis Brouillard (Brouillard).

Following this transaction, the informants then proceeded to a prearranged rendezvous with the officers where the informants turned over the purchased methamphetamine. The informants reported that Pigg and Brouillard stated that they were disassembling a methamphetamine lab in the apartment and that they had end-product methamphetamine on the premises. The informants further described observing apparatuses and chemicals commonly used to manufacture the drug. Following the discussion with the informants and a positive field test of the drug, an officer left the scene to prepare a search warrant affidavit and a search warrant application. The affidavit contained facts obtained solely from the undercover operation and did not rely on information from the events that later transpired.

Morley and Pigg subsequently left the premises by automobile and were stopped by officers a few blocks from the apartment.[1] In response to the officers' questions, Pigg stated that he and Morley were proceeding to a nearby store and that Brouillard, remaining at the apartment, would expect them back soon.

Purportedly concerned that the absence of Pigg would alarm Brouillard and cause him to destroy evidence, the officers entered Morley's apartment without a warrant. The officers conducted a sweep of the apartment for suspects and secured the premises, but did not initiate the search that ultimately led to the collection of evidence.

Five minutes after entering the apartment, the officers received notification that a judge had signed the search warrant. The officers at the apartment immediately executed the search warrant, *see People v. Gifford,* 782 P.2d 795, 797 n. 2 (Colo.1989) ("[P]resentment of the warrant prior to the commencement of the search is not an absolute constitutional requirement."), discovering evidence indicating the presence of a methamphetamine lab, as well as over twenty grams of the drug. Officers also discovered evidence linking Morley to the drug activity.

Morley was charged with several counts of controlled substance violations. At a pretrial hearing, Morley moved for the suppression of the evidence obtained at the apartment. After reviewing the transcript of co-defendant Pigg's suppression hearing, in which that court suppressed evidence obtained at the apartment, the trial court granted Morley's motion to suppress. Relevant to this appeal, the court ruled that the exigent circumstances exception did not apply because sufficient evidence of the potential destruction of evidence was not presented, thereby rendering the initial, warrantless entry illegal. This finding is not challenged in this interlocutory appeal. Further, the trial court found that the inevitable discovery exception did not apply to rehabilitate the evidence discovered in the apartment. Based on these findings, the trial court suppressed the evidence seized by the officers at the defendant's apartment.

On interlocutory appeal, the People argue that the trial court erred in failing to apply the inevitable discovery rule, and therefore, the court erred in suppressing the evidence obtained at the apartment. For different reasons, we agree that the trial court erred in suppressing the evidence. We reverse the order of the trial court and remand the case for proceedings consistent with this opinion.

### II.

In reviewing suppression orders, we must examine whether the trial court's findings of historical fact are adequately supported by competent evidence and whether the trial court applied the correct legal standard to these findings. *See People v. D.F.,* 933 P.2d 9, 14 (Colo.1997). While we grant deference to the factual findings of the trial court that are supported by competent evi-

---

1. The trial court found this vehicle stop to be illegal and suppressed evidence garnered therefrom. The suppression of this evidence is not challenged in this interlocutory appeal.

dence in the record, we have reversed a suppression order when the trial court's conclusion of law is "inconsistent with or unsupported by" the evidentiary record. *See id.* (quoting *People v. Quezada,* 731 P.2d 730, 732–33 (Colo.1987)). As with the trial court, our review must examine the totality of the circumstances to reach the ultimate legal conclusion with respect to the suppression order. *See id.*

■ Central to the disposition of the case before us is the exclusionary rule and its exceptions. The exclusionary rule is a judicially created remedy designed primarily to deter unlawful searches and seizures by law enforcement officials. *See People v. Burola,* 848 P.2d 958, 960 (Colo.1993). This rule operates to suppress evidence obtained in violation of the Fourth Amendment and article II, section 7 of the Colorado Constitution from presentation during the prosecution's case-in-chief. *See id.* at 961.

■ Three doctrines—the independent source, the attenuation, and the inevitable discovery doctrines—are well-established exceptions to the exclusionary rule, and permit the admission of evidence obtained in violation of the Fourth Amendment. *See id.* Relevant to the issue before us is the independent source doctrine. Under this exception to the exclusionary rule, "the unconstitutionally obtained evidence may be admitted if the prosecution can establish that it was also discovered by means independent of the illegality."[2] *People v. Schoondermark,* 759 P.2d 715, 718 (Colo.1988).

We applied the independent source exception to circumstances very similar to those presented before us today in the *Schoondermark* case. That decision is dispositive of the case at bar.

In *Schoondermark,* the Fort Collins police department arranged an undercover drug

transaction. *See* 759 P.2d at 716. An informant purchased illicit drugs at the defendant's home and then proceeded to a prearranged rendezvous with police officers. The informant gave the drugs to the officers and informed them of the events transpiring in the house.

Based on the information provided by the informant, the officers arrested the defendant outside of his house, but returned into the house apparently to escape the extreme cold. *See id.* The officers conducted a sweep for the presence of additional persons in the house, but did not otherwise conduct a search for evidence. *See id.* at 717. At this point an officer left the scene to secure a warrant. The affidavit supporting the warrant did not reference any of the illegal contraband observed during the initial, illegal search. Approximately three hours after the arrest, the officer returned with a search warrant. The ensuing search of the house uncovered both drugs and drug paraphernalia, and the defendant was arrested and charged with several counts of controlled substances violations.

The trial court admitted the evidence over the defendant's motion to suppress. *See id.* The court of appeals, however, reversed, holding that the evidence was the product of an illegal warrantless search, that no exigent circumstances existed to justify the warrantless search, and that the inevitable discovery rule did not rehabilitate the evidence. *See id.*

Relying exclusively on the U.S. Supreme Court's decision in *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), we reversed the court of appeals, and remanded the case for additional findings as to whether the observations during the illegal warrantless entry affected the decision to obtain a warrant.[3] In doing so, we stated

---

**2.** The People argue before us, as they did before the trial court, that the evidence should have been admitted through the inevitable discovery rule. Under this exception to the exclusionary rule, "evidence initially discovered in an unconstitutional manner may be received if that same evidence inevitably would have been obtained lawfully." *Schoondermark,* 759 P.2d at 718. While the two concepts are related, *see Murray v. United States,* 487 U.S. 533, 539, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) ("The inevitable discov-

ery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine ...."), the circumstance presented in the case before us today is properly analyzed under the independent source rule.

**3.** In *Murray,* federal agents obtained information regarding drug distribution out of a warehouse. *See Murray,* 487 U.S. at 535, 108 S.Ct. 2529. The agents entered the warehouse without a warrant, espied numerous bales of marijuana, and

that "'[s]o long as a later, lawful seizure is genuinely independent of an earlier, tainted one . . . there is no reason why the independent source doctrine should not apply.'" *Schoondermark*, 759 P.2d at 719 (quoting *Murray*, 487 U.S. at 542, 108 S.Ct. 2529) (alterations in original). As expanded upon in *Murray*:

> The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the . . . decision to seek the warrant was prompted by what [the law enforcement personnel] had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.

*Murray*, 487 U.S. at 542, 108 S.Ct. 2529.

█ In the case before us today, the independent source doctrine applies and requires a reversal of the suppression order. Despite the undisputed illegality of the initial entry, the Thornton officers subsequently obtained evidence from the apartment pursuant to the legal search conducted under the authority of a valid search warrant. The factual circumstances demonstrate that the search pursuant to the warrant was conducted independent of the illegality involved with the initial entry. First, warrant procurement procedures were initiated well before the illegal entry. *Cf. Murray*, 487 U.S. at 542, 108 S.Ct. 2529 (recognizing that the independent source doctrine does not apply when the "decision to seek the warrant was prompted by what [was observed] during the initial entry"); *Schoondermark*, 759 P.2d at 719. Second, the affidavit supporting the warrant relied only on facts obtained during the undercover operation, rather than facts obtained from the illegal search of the vehicle or the illegal entry into the apartment. *Cf. Murray*, 487 U.S. at 542, 108 S.Ct. 2529 (recognizing that the independent source

doctrine does not apply when information obtained during an illegal entry affects a judge or magistrate's decision to issue a warrant); *Schoondermark*, 759 P.2d at 719. Finally, no other evidence that would otherwise subvert a conclusion of independence has been presented.

Unlike *Schoondermark* and *Murray*, this case need not be remanded for further factfinding. In those cases, officers initiated warrant application procedures after the illegal searches. *See Schoondermark*, 759 P.2d at 717; *see also Murray*, 487 U.S. at 535–36, 108 S.Ct. 2529. This gave rise to the potential inference that the warrant was sought and granted based upon facts gathered during the illegal searches. As recognized in *Murray*, a warrant obtained in such circumstances would not be the product of a "genuinely independent source," and therefore could not act as an exception to the exclusionary rule. *Murray*, 487 U.S. at 542, 108 S.Ct. 2529; *see also Schoondermark*, 759 P.2d at 719.

The case before us presents a different scenario. Clearly, the officers' decision to seek a warrant was not prompted by the officers' observations in Morley's apartment. Indeed, the record shows that an officer actively pursued the warrant immediately after the conversation with the informant—before the vehicle stop and before the officers entered the apartment.

Considering the totality of the circumstances, we conclude that, despite the initial illegal entry, the evidence from the apartment was obtained lawfully through an independent source. *See Schoondermark*, 759 P.2d at 716–20; *see also Murray*, 487 U.S. at 533–44, 108 S.Ct. 2529. Therefore, the independent source exception to the exclusionary rule operates to allow admission at trial of the evidence obtained at the apartment. Consequently, the trial court erred in suppressing that evidence.

---

exited the warehouse without disturbing the drugs. Obtaining a warrant supported wholly by evidence that was not obtained during the illegal entry, the agents returned with the warrant, seized the marijuana, and arrested the defendants. The U.S. Supreme Court recognized that the independent source doctrine potentially applied to allow the admission of the evidence,

despite the initial illegal entry. *See id.* at 537–43, 108 S.Ct. 2529. The Court, however, remanded the case for a determination by the trial court as to whether the agents would have sought a warrant if they had not earlier entered the warehouse. *See id.* at 543, 108 S.Ct. 2529; *see also Schoondermark*, 759 P.2d at 719–20 (remanding for the same determination).

### III.

For these reasons, we reverse the suppression order of the trial court and remand for proceedings consistent with this opinion.