The PEOPLE of the State of Colorado, Plaintiff–Appellant.

v.

Joseph Phillip DIAZ, Defendant–Appellee.

No. 02SA156.

Supreme Court of Colorado, EN BANC.

Sept. 9, 2002.

G.F. Sandstrom, District Attorney, Margaret C. Vellar, Deputy District Attorney, Pueblo, Colorado, Attorneys for Plaintiff–Appellant.

Michael S. Emmons, Pueblo, Colorado, Attorney for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

In this interlocutory appeal, filed pursuant to C.A.R. 4.1, the prosecution appeals the trial court's suppression of blood and hair evidence the Pueblo police obtained from the defendant, Joseph Diaz. We hold that the police violated the Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution by obtaining blood and hair samples through a warrantless search and seizure without a court order pursuant to Crim. P. 41.1. Because no exceptions to the warrant requirement apply, we uphold the trial court's order suppressing the illegally obtained evidence. However, the trial court erred in barring the prosecution—as a sanction for the prior police misconduct—from obtaining an order for nontestimonial identification evidence from the defendant.

I.

On December 18, 2000, Officer Abeyta responded to a sexual assault call. The victim told Officer Abeyta that an ex-boyfriend named Joseph Diaz had twice sexually assaulted her. Officer Oritz, who had also responded to the call, then contacted Diaz. Diaz said he was willing to talk with the police regarding the allegations.

At the police department, Officer Oritz advised Diaz of his *Miranda* rights. Simply stating that "I did nothing wrong," Diaz did not waive these rights. Officer Oritz asked Diaz if he would voluntarily provide samples of his hair and blood. Diaz refused. Officers then transported Diaz to St. Mary–Corwin Hospital for a sexual assault examination. The officers did not obtain a court order for the collection of nontestimonial evidence from Diaz pursuant to Crim. P. 41.1. At the hospital, a nurse specializing in sexual assaults drew blood and plucked head and pubic hairs from Diaz, but did not comb for

foreign hairs or swab to detect foreign bodily fluid.

Subsequently, the prosecution charged Diaz with sexual assault,[1] a class four felony, and violation of a restraining order,[2] a class two misdemeanor. Diaz filed a motion to suppress the nontestimonial evidence collected at the hospital prior to his arrest. After a hearing, the trial court granted Diaz's motion to suppress the head hair, pubic hair, and blood taken from Diaz at the hospital. As a sanction against police misconduct, the trial court also ruled that it would not entertain any prosecution requests to collect hair and blood samples from Diaz under Crim. P. 41.1 and Crim. P. 16(II)(a).

## II.

We hold that the police violated the Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution by obtaining blood and hair samples through a warrantless search and seizure without a court order pursuant to Crim. P. 41.1. Because no exceptions to the warrant requirement apply, we uphold the trial court's order suppressing the illegally obtained evidence. However, the trial court erred in barring the prosecution—as a sanction for the prior police misconduct—from obtaining an order for nontestimonial identification evidence from the defendant.

Crim. P. 41.1 sets forth a procedure for obtaining from the court an order for the taking of nontestimonial identification evidence prior to the defendant's arrest or after arrest and prior to trial:

### Crim. P. 41.1. Court Order for Nontestimonial Identification

. . .

**(b) Time of Application.** *A request for a nontestimonial identification order may be made prior to the arrest of a suspect, after arrest and prior to trial or, when special circumstances of the case make it appropriate, during trial.*

**(c) Basis for Order.** *An order shall issue only on an affidavit or affidavits sworn to or affirmed before the judge and establishing the following grounds for the order:*

*(1) That there is probable cause to believe that an offense has been committed;*

*(2) That there are reasonable grounds, not amounting to probable cause to arrest, to suspect that the person named or described in the affidavit committed the offense; and*

*(3) That the results of specific nontestimonial identification procedures will be of material aid in determining whether the person named in the affidavit committed the offense.*

**(d) Issuance.** *Upon a showing that the grounds specified in section (c) exist, the judge shall issue an order directed to any peace officer to take the person named in the affidavit into custody to obtain nontestimonial identification.* The judge shall direct that the designated nontestimonial identification procedures be conducted expeditiously. After such identification procedures have been completed, the person shall be released or charged with an offense.

Crim. P. 41.1, 12 C.R.S. (2001)(emphasis added). This rule applies to police gathering of nontestimonial identification evidence under authorization by a judicial officer. Lacking a court order, the police proceeded with a warrantless search and seizure of Diaz, and the exclusionary rule applies in this case to suppress the evidence thus obtained.

### A. Search and Seizure of Nontestimonial Identification Evidence

The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution forbid the unreasonable search and seizure of nontestimonial identification evidence taken from a defendant's body. *People v. Harris*, 762 P.2d 651, 654 (Colo.1988); *People v. Williams*, 192 Colo. 249, 257, 557 P.2d 399, 406 (1976)(stating that "because of the special insult to human dignity involved when

---

1. Sexual Assault, § 18–3–402(1)(a) and (2), 6 C.R.S. (2001).

2. Crime of Violation of a Restraining Order, § 18–6–803.5(1) and (2)(a), 6 C.R.S. (2001).

police seek evidence in body apertures or bodily fluids, special rules restrict internal body searches"). A warrantless search or seizure is presumed unconstitutional. *People v. Winpigler*, 8 P.3d 439, 443 (Colo.1999). The warrant requirement interposes an impartial member of the judiciary between the law enforcement officer and the person against whom the arrest and/or search is directed. *People v. O'Hearn*, 931 P.2d 1168, 1173 (Colo.1997).

■ The exclusionary rule seeks to deter improper police conduct by suppressing evidence obtained by the police in violation of the Fourth Amendment from presentation during the prosecution's case-in-chief. *People v. Kazmierski*, 25 P.3d 1207, 1213 (Colo. 2001); *People v. Morley*, 4 P.3d 1078, 1080 (Colo.2000). The exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

■ When reviewing a suppression order, we defer to the trial court's findings of fact, but analyze the trial court's application of legal standards to those facts de novo. *Kazmierski*, 25 P.3d at 1210.

### 1. Warrantless Search of Diaz

■ The police officers took Diaz to the hospital without his consent and obtained blood and hair samples without a court order. This search and seizure was unconstitutional unless an exception to the warrant requirement applies. At the suppression hearing, Officer Oritz testified that the police's failure to seek a Crim. P. 41.1 order was based on exigent circumstances because of their concern about losing any bodily fluid or hair evidence that may have been transferred from the victim to Diaz. Officer Oritz cited Diaz's clothing change as support for this concern. In *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), the United States Supreme Court held that a warrantless search based upon the existence of probable cause and ready destructibility of the evidence, involving a very limited intrusion undertaken incident to a station house detention, did not violate the Fourth and Fourteenth Amendments. *Id.* at 296, 93 S.Ct. 2000. In that case, the police scraped under the defendant's fingernails in order to preserve highly evanescent evidence while he was detained at the station house upon probable cause. *Cupp*, 412 U.S. at 292, 93 S.Ct. 2000.

Here, however, no exigent circumstance existed to justify the warrantless search and seizure. Diaz's blood and hair were not subject to ready disappearance.[3] The search of Diaz was not a very limited intrusion, nor was it conducted to obtain readily destructible evidence. *Cupp*, 412 U.S. at 296, 93 S.Ct. 2000.

The prosecution urges the court to apply our holding in *People v. Williams*, 192 Colo. 249, 557 P.2d 399 (1976), to the present case. In *Williams*, we held that "[i]n determining whether forced production of bodily fluids is permissible, the appropriate standard is *clear indication* that evidence of intoxication or drug abuse will be found. Moreover, there must be some indication that evidence of drugs or alcohol, if found, will be relevant to a crime for which the defendant may be charged." *Williams*, 192 Colo. at 258, 557 P.2d at 406 (emphasis in original). *Williams* is inapplicable here. Evidence of intoxication or drugs in the human system is ephemeral and can disappear in the time it takes to obtain a court order. Here, the police only obtained Diaz's own hair and blood, items which could easily have been acquired at any time with a court order.

### 2. Exclusionary Rule and Inevitable Discovery Exception

■ The trial court applied the exclusionary rule in this case to suppress the evidence seized in violation of the Fourth Amendment and article II, section 7 of the Colorado Constitution. The prosecution argues that the police-obtained evidence should be admit-

---

**3.** The nurse did not comb for foreign pubic hair or swab for foreign bodily fluid. Accordingly, we do not decide whether exigent circumstances existed for taking that type of evidence without a court order.

ted under the inevitable discovery exception to the exclusionary rule requirement, because the state may obtain blood and hair samples at any time under Crim. P. 41.1 or Crim. P. 16(II)(a). We disagree. The prosecution's ability to obtain identity evidence under these rules while the criminal case is pending does not satisfy the requirements of the inevitable discovery exception.

 The independent source, attenuation, and inevitable discovery doctrines are well-established exceptions to the exclusionary rule, and permit the admission of evidence obtained in violation of the Fourth Amendment. *Morley,* 4 P.3d at 1080. The inevitable discovery exception to the exclusionary rule allows evidence initially discovered in an unconstitutional manner to be received, but only if the prosecution can establish that the information ultimately or inevitably would have been discovered by lawful means. *People v. Burola,* 848 P.2d 958, 962 (Colo.1993); *see People v. Breidenbach,* 875 P.2d 879, 889 (Colo.1994).

 We have previously stated that the ability to subsequently obtain a lawful search warrant, after the illegal search has occurred, does not satisfy the inevitable discovery exception requirements. *Burola,* 848 P.2d at 963. Rather, the police must have been pursuing another lawful means of discovery at the time the illegality occurred:

> "If evidence is obtained by illegal conduct, the illegality can be cured only if the police possessed and were pursuing a lawful means of discovery at the time the illegality occurred. The Government cannot later initiate a lawful avenue of obtaining the evidence and then claim that it should be admitted because its discovery was inevitable. This is a sound rule, especially when applied to a case in which a search warrant was constitutionally required. Because a valid search warrant nearly always can be obtained after the search has occurred, a contrary holding

would practically destroy the requirement that a warrant for the search of the home be obtained before the search takes place."

*Id.* at 963 (quoting *United States v. Satterfield,* 743 F.2d 827, 846 (11th Cir.1984), cert. denied, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985) (citations omitted))(emphasis added).

 Evidence is not admissible under the inevitable discovery exception based on speculation that the evidence would have been discovered anyway. *Breidenbach,* 875 P.2d at 889. The prosecutor must establish that there was a reasonable probability that the evidence would have been discovered in the absence of police misconduct, and that the police were pursuing an independent investigation at the time the illegality occurred. *Id.* at 889.

Here, the prosecution has not shown that an independent police investigation was being conducted, or that the police would have inevitably discovered the evidence through such an investigation despite their misconduct.[4] We conclude that the inevitable discovery exception to the exclusionary rule does not apply in this case to the illegally seized blood and hair evidence. Thus, the trial court properly suppressed the evidence.

### B. Trial Court's Sanction

 As a sanction for the warrantless police search and seizure of Diaz's hair and blood, the trial court ruled that the prosecution could not pursue a motion for nontestimonial identification evidence under Crim. P. 16(II)(a) and Crim. P. 41.1. Specifically, the trial court ruled:

> In addition to that, this Court as a—I think when we suppress things, *we also are to sanction the police.* To suppress these items and then allow *another 41.1, another request under Rule 16* to be made, basically, does absolutely nothing but, I think, encourage the police to act as they did in this case. Therefore, *the Court will*

---

4. The case before us is distinguishable from the United States Supreme Court's holding in *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). In *Nix,* two independent investigations were being conducted simultaneously. *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)(volunteer search for victim's body was proceeding at same time as police interrogation of defendant). Here, the police were pursuing only one line of investigation.

*not grant any other requests by the prosecution in this matter* to gather this specific kind of evidence from this Defendant.

(Emphasis added.)

 A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Crow*, 789 P.2d 1104, 1106 (Colo.1990). Here, the trial court abused its discretion by forbidding the prosecution from filing a motion under Crim. P. 16(II)(a) [5] and Crim. P. 41.1 for nontestimonial identification evidence. In effect, this ruling sanctioned the prosecution for the police department's misconduct. Although Crim. P. 16(III)(g) provides the trial court with discretion to issue sanctions for discovery violations, the prosecution did not violate Crim. P. 16 and could not be sanctioned for the police conduct in which it did not participate. Accordingly, Crim. P. 16(III)(g) was inapplicable.

 The police violated the Fourth Amendment and article II, section 7 of the Colorado Constitution by obtaining blood and hair samples through a warrantless search and seizure without a court order pursuant to Crim. P. 41.1, and no exceptions to the warrant requirement apply. *People v. Schoondermark*, 759 P.2d 715, 717–18 (Colo.1988)("A warrantless search violates the fourth amendment unless it falls within one of the recognized exceptions to the warrant requirement.") Suppression of the illegally obtained evidence was the sufficient and required remedy for the unconstitutional police search and seizure. Additional sanctions might be appropriate in an instance of governmental loss or destruction of exculpatory

and material evidence, discovery violation, or other egregious governmental misconduct. *See People v. Braunthal*, 31 P.3d 167, 172–73 (Colo.2001).

 However, an illegal seizure of previous identification samples from the defendant by the police does not foreclose the prosecution from obtaining identity evidence through proper means after filing of the case.[6] *See People v. Madsen*, 743 P.2d 437, 439 (Colo.App.1987)(holding that second set of defendant's palm prints were not tainted by prosecution's violation of Crim. P. 16(II)(a) in obtaining the first set of defendant's palm prints). Crim. P. 41.1 and Crim. P. 16(II)(a) do not prevent the prosecution from filing a request for nontestimonial identification evidence, despite a prior police illegal search and seizure. *See* Crim P. 41.1, 12 C.R.S. (2001); Crim. P. 16(II)(a), 12 C.R.S. (2001).

 Moreover, in seeking the nontestimonial identification evidence through Crim. P. 16(II)(a) and Crim. P. 41.1, the prosecution does not rely on information or evidence the police obtained by means of an illegal search and seizure. *See Madsen*, 743 P.2d at 439; *Schoondermark*, 759 P.2d at 719 ("[A] search pursuant to a warrant would not be a genuinely independent source of the challenged evidence if the decision to seek the warrant was prompted by what was observed during the initial entry or if information obtained during that entry was relied upon by the magistrate in issuing the warrant."); *People v. Barndt*, 199 Colo. 51, 56, 604 P.2d 1173, 1176 (1980). The type of evidence addressed by Crim. P. 41.1 and Crim. P.

---

5. Crim. P. 16(II)(a), 12 C.R.S. (2001), provides:
 **Crim. P. 16. Discovery and Procedure Before Trial**

 **Part II. Disclosure to Prosecution**

 (a) The Person of the Accused.
 (1) Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, upon request of the prosecuting attorney, the court may require the accused to give any nontestimonial identification as provided in Rule 41.1(h)(2).
 (2) Whenever the personal appearance of the accused is required for the foregoing purposes,

reasonable notice of the time and place of such appearance shall be given by the prosecuting attorney to the accused and his counsel. Provision may be made for appearance for such purposes in an order admitting the accused to bail or providing for his release.

6. We note that once judicial proceedings against a defendant have been initiated, the prosecution in seeking nontestimonial identification evidence must proceed with notice through Crim. P. 16(II)(a), which incorporates by reference Crim. P. 41.1(h)(2). *See People v. District Court*, 664 P.2d 247, 250 n. 5 (Colo.1983); *People v. Angel*, 701 P.2d 149, 150–51 (Colo.App.1985).

16(II)(a) is nontestimonial identification evidence, such as blood, hair, fingerprints, footprints, etc. *See* Crim. P. 41.1(h)(2), 12 C.R.S. (2001). The trial court in this case may not preclude the prosecution from requesting this type of nontestimonial identification evidence under Crim. P. 16(II)(a) and Crim. P. 41.1.

### III.

Accordingly, we uphold the trial court's order suppressing the blood and hair samples taken through a warrantless search and seizure without a court order for nontestimonial identification evidence collection. We reverse the court order prohibiting the prosecution from applying for and obtaining an order under Crim. P. 16(II)(a) and Crim. P. 41.1.