Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 17, 2019

**2019 CO 52**

**No. 19SA13, *People v. Haack* — Search and Seizure — Exclusionary Rule — Independent Source.**

The People brought an interlocutory appeal, as authorized by section 16-12-102(2), C.R.S. (2018), and C.A.R. 4.1, from an order of the district court partially granting Haack's motion and suppressing evidence acquired after officers made a warrantless entry into his residence.  The district court found that the officers had unlawfully followed the defendant into his home and, as a result, all relevant evidence they acquired either inside the home or after the defendant and officers went back outside should be suppressed. The court did not, however, offer any rationale for suppressing the evidence acquired after leaving the defendant's residence beyond the fact that the acquisition followed in time the unlawful entry.

The supreme court holds that because the district court failed to address the question whether the evidence it suppressed was independent of the earlier unlawful entry, the portion of its order suppressing this evidence was not adequately supported by its findings and is therefore vacated.  The case is remanded with directions to determine whether the evidence acquired after leaving the defendant's home was in fact

derivative of the unlawful entry at all and if so whether the subsequent searches in which

that evidence was discovered were genuinely independent sources of that evidence.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 52

**Supreme Court Case No. 19SA13**
*Interlocutory Appeal from the District Court*
Moffat County District Court Case No. 18CR146
Honorable Shelley A. Hill, Judge

**Plaintiff-Appellant:**

The People of the State of Colorado,

v.

**Defendant-Appellee:**

Keith Haack.

**Order Vacated in Part and Case Remanded With Directions**
*en banc*
June 17, 2019

**Attorneys for Plaintiff-Appellant:**
Brett D. Barkey, District Attorney, Fourteenth Judicial District
Matthew J.W. Tjosvold, Chief Deputy District Attorney
    *Craig, Colorado*

**Attorneys for Defendant-Appellee:**
Salky Law, LLC
Randall P. Salky
    *Steamboat Springs, Colorado*

**CHIEF JUSTICE COATS** delivered the Opinion of the Court.

¶1     The People brought an interlocutory appeal, as authorized by section 16-12-102(2), C.R.S. (2018), and C.A.R. 4.1, from an order of the district court partially granting Haack's motion and suppressing evidence acquired after officers made a warrantless entry into his residence. The district court found that the officers, who were investigating the defendant for driving under the influence, had unlawfully followed the defendant into his home and, as a result, all relevant evidence they acquired either inside the home or after the defendant and officers went back outside should be suppressed. The court expressly found that the defendant was not in custody for purposes of Miranda warnings until he was ultimately arrested outside the home and that the results of the defendant's field sobriety tests, including a horizontal gaze nystagmus test, and subsequent blood test, both of which were conducted after leaving the residence, would have been admissible but for the earlier constitutional violation. The court did not, however, offer any rationale for suppression of these test results beyond the fact that they followed in time the unlawful entry.

¶2     Because the district court failed to address the question whether the evidence it suppressed was independent of the earlier unlawful entry, the portion of its order suppressing this evidence was not adequately supported by its findings and is therefore vacated. The case is remanded with directions to determine whether the evidence acquired after leaving the defendant's home was in fact derivative of the unlawful entry at all and if so whether the subsequent searches in which that evidence was discovered were genuinely independent sources of that evidence.

## I.

¶3     Keith Haack was charged with two felonies: Driving Under the Influence (DUI)—Fourth or Subsequent Offense and DUI Per Se—Fourth or Subsequent Offense. He moved to suppress all evidence obtained after police first made contact with him, arguing that the police had failed to give the required *Miranda*[1] advisement and had illegally searched his home. After hearing the motion, the district court made written findings of fact and conclusions of law, partially granting and partially denying the motion.

¶4     As relevant to the suppression order challenged here by the People, the district court's findings and other undisputed testimony at the hearing indicated the following. In the early morning hours of April 12, 2018, the police received a report to the effect that the defendant had just driven away from the Memorial Hospital at Craig after having been told by medical personnel that he was unsafe to drive. The reporting party gave the defendant's name and a description and license plate number of the truck he was driving. Within minutes an officer arrived at the defendant's home and saw the defendant step down from the driver's seat of the truck described in the report, which still had its lights on.

¶5     When questioned by the officer, the defendant responded that friends had driven him home from the hospital and that he was only in the truck to look for cigarettes. A second officer who had arrived spoke on the phone directly with the doctor making the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

report, who indicated that the defendant had come to the hospital intoxicated and, despite being told that his blood alcohol content made it unsafe for him to drive before about noon, was seen by the doctor and a nurse driving away in his truck. In conversation with the police on his patio, the defendant confirmed that he had sought treatment for alcohol withdrawal after having consumed alcohol for two days straight. Although he claimed that he had stopped drinking around 8 or 9 o'clock the previous evening, he admitted several times that he was not safe to drive.

¶6 Over the course of his interaction with the police, in which he declined to perform field sobriety tests or give the names or phone numbers of the friends who drove him home, the defendant went in and out of his home several times, closing and reopening the door. Ultimately, the police followed the defendant into his home, preventing him from closing the door. After the officers repeatedly asked him to step back outside, the defendant complied, but not before an officer was able to detect an odor of alcohol on him.

¶7 Once outside the officers continued to request that the defendant submit to field sobriety tests, including a horizontal gaze nystagmus test. When he ultimately complied and was adjudged not to have completed the tests as a sober person would, the defendant was arrested. After being read an express consent form, the defendant chose to take a blood test and was taken to the hospital where the test was administered.

¶8 The district court concluded that in making a warrantless entry into the defendant's home, the police violated his constitutional rights. It nevertheless also found

4

that the defendant was never in custody for purposes of the *Miranda* requirements until he was formally placed under arrest, and that the field sobriety test results, including the results of the horizontal gaze nystagmus test, would have been admissible, subject to the constitutional violations it had already noted. It therefore granted the motion to suppress in part and denied it in part, stating that all observations by the officers and all statements made by the defendant before the officers crossed the threshold of the defendant's residence would be admissible in evidence, but that all observations by the officers, all statements made by the defendant, and all other evidence obtained after the officers crossed the threshold of the defendant's residence would be suppressed.

¶9 The People filed an interlocutory appeal, as authorized by section 16-12-102(2), C.R.S. (2018), and C.A.R. 4.1, asserting in this court that the district court erred in suppressing the results of the blood and field sobriety tests, as well as statements made by the defendant after leaving the house, for the reason that this evidence was acquired from an independent source.

## II.

¶10 The exclusionary rule generally prohibits not only the introduction into evidence of tangible materials seized, and testimony concerning knowledge acquired, during an unlawful search but also evidence that is either the product of the primary evidence or is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint. *Murray v. United States*, 487 U.S. 533, 536–37 (1988). The Supreme Court has also made

5

clear, however, that the purpose of the exclusionary rule—to put the police in the same, rather than a worse, position than they would have been in if no police error or misconduct had occurred—would not be served by excluding evidence that has an independent source. *Murray*, 487 U.S. at 537.

¶11 As the Court further noted, it has used the concept of "independent source" at times in a more general sense and at times in a more specific sense. *Id.* With regard to the former, the Supreme Court has applied the term to any evidence acquired in a fashion untainted by prior illegal evidence-gathering activity. *Id.* at 537–38 (citing as an example *Segura v. United States*, 468 U.S. 796, 804–05 (1984)). With regard to the latter, it has applied the term more specifically to evidence, whether tangible or intangible, that was actually acquired during or as the result of an unlawful search but was rediscovered during a lawful search that was genuinely independent of the earlier tainted search. *Id.* at 538 (citing as an example *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920)).

¶12 In the context of a second search of premises pursuant to a search warrant, following an unlawful earlier search of the same premises, the Supreme Court has, however, drawn a distinction between the source of the probable cause supporting the warrant and the question whether the warrant and second search would have been pursued at all but for what the police observed during the first, unlawful search. *Id.* at 541–42. Making clear that findings of both were required for the second search and seizure to be considered genuinely independent of the earlier tainted one, the Supreme

6

Court in *Murray* remanded for a determination whether, despite the second search being supported by probable cause from an independent source, the police were prompted to conduct that search only by what they had already seen. *Id.* at 542–43. In *People v. Schoondermark*, 759 P.2d 715 (Colo. 1988), we followed suit and similarly remanded for a specific finding concerning the motivation of the police officers in that case to seek a warrant to search premises, following an earlier unlawful entry of the same premises, despite clear findings that the affidavit for the warrant was supported only by probable cause apart from and independent of any observations made during the initial, unlawful entry. *Id.* at 716–17, 719.

¶13    While the second search with which the Supreme Court was concerned in *Murray* was authorized by warrant, the Court's reasoning applies equally to searches executed pursuant to an exception to the warrant requirement. The Court's holding—that genuine independence of source requires not only that probable cause for the subsequent search or seizure be independent of any observations made during, or as the product of, an unlawful search, but also that the second search may not have been prompted by such observations—is in no way limited to a subsequent application for a search warrant. *See Murray*, 487 U.S. at 542 (stating—without limitation as to the type of potentially independent source—that as long as the later search or seizure was genuinely independent of the earlier tainted one, the independent source doctrine would apply). Whether authorized by warrant or not, a subsequent search can serve as an independent source only if both conditions have been demonstrated.

## III.

¶14     On appeal from the district court's suppression order, the People do not challenge that court's finding of an unlawful entry by the police, but rather renew their assertion that the defendant's field sobriety and blood test results acquired after leaving his residence were independent of the earlier unlawful search; and more particularly, that the police had already acquired probable cause, and intended, to arrest the defendant for driving under the influence before ever following him into his home.

¶15     The district court expressly found that all observations by the officers and statements by the defendant made before the police entered his home would be admissible.  It also found that the results of the field sobriety tests performed by the defendant after leaving his residence would have been admissible, apparently as based on the defendant's voluntary consent, but for the constitutional violation of unlawfully entering the residence.  The court did not, however, offer any reason for believing that the evidence it ordered suppressed was derivative of, or in any way the direct or indirect result of, observations made during an earlier unlawful search, much less any reason for not treating these "searches" and the defendant's arrest as having also been based, in any event, on probable cause from independent sources.  Whether the district court envisioned some more specific taint it simply failed to express, or it erroneously believed a preceding unlawful search was enough, its findings were clearly insufficient to sustain its order.

¶16    It is clear from the court's factual findings and the undisputed evidence from the suppression hearing that the officers had probable cause to arrest the defendant, and therefore to require that he perform field sobriety tests, *see People v. Carlson*, 677 P.2d 310, 317–18 (Colo. 1984), *abrogated on other grounds by People v. Chavez-Barragan*, 2016 CO 66, 379 P.3d 330, well before they followed him into his house. Quite apart from the report of hospital staff concerning his state of intoxication, the defendant admitted to the police while still outside on his patio that he was in no condition to drive. He simply contested the fact that he had driven himself home from the hospital. Not only did the police have the report of a doctor and nurse that they had seen the defendant drive away in his truck, but one of the officers actually witnessed the defendant, only minutes later, exiting the driver's side of the truck, with its lights still on. If there could be any doubt in this case, the question of probable cause is a mixed question of fact and law, ultimately for a reviewing court to decide. *People v. Coates*, 266 P.3d 397, 400 (Colo. 2011).

¶17    Nevertheless, because the district court found as a matter of fact that the officers were first able to detect the odor of alcohol on the defendant while they were unlawfully in the defendant's house, and because they had not placed him in custody before entering the house, there remains at least some question whether the police had not yet determined to arrest him and were instead prompted to do so by their observations during the unlawful search. The question whether the police would have pursued a second search and arrested the defendant but for what they observed during the earlier unlawful search is a question of fact. *Murray*, 487 U.S. at 543; *People v. Morley*, 4 P.3d 1078,

9

1081 (Colo. 2000). Except in the rare case in which the timing of the second search is such as to preclude a finding that it was prompted by an earlier unlawful search, *see, e.g.*, *Morley*, 4 P.3d at 1081 (holding that remand was unnecessary when warrant procurement procedures were initiated well before illegal entry, which occurred only five minutes before warranted search, and there was no evidence subverting a conclusion of independence), this question of fact must be resolved by the trial court, *Murray*, 487 U.S. at 543; *Schoondermark*, 759 P.2d at 719.

¶18 Rather than simply reversing the district court's order of suppression and finding the evidence in question to be admissible, we therefore vacate the district court's existing order and remand for further findings and conclusions regarding the question whether any evidence acquired after leaving the defendant's home was in fact derivative of the unlawful entry and if so whether the defendant's subsequent test results and arrest were genuinely independent of the initial unlawful search. On remand, the district court, at its discretion, may allow the parties to present additional evidence, and the People bear the burden of establishing such genuine independence by a preponderance of the evidence. *See Schoondermark*, 759 P.2d at 719.

## IV.

¶19 Because the district court failed to address the question whether the evidence it suppressed was independent of the earlier unlawful entry, the portion of its order suppressing this evidence was not adequately supported by its findings and is therefore vacated. The case is remanded with directions to determine whether the evidence

10

acquired after leaving the defendant's home was in fact derivative of the unlawful entry at all and if so whether the subsequent searches in which that evidence was discovered were genuinely independent sources of that evidence.