The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

James CRIPPEN, Defendant–Appellee.

No. 09SA212.

Supreme Court of Colorado,
En Banc.

Feb. 1, 2010.

Bill Thiebaut, District Attorney, Tenth Judicial District, Stephen Cornetta, Deputy District Attorney, Pueblo, Colorado, Attorneys for Plaintiff–Appellant.

Koncilja & Koncilja, P.C., Joseph A. Koncilja, Pueblo, Colorado, Attorney for Defendant–Appellee.

Justice COATS delivered the Opinion of the Court.

The People brought an interlocutory appeal pursuant to section 16–12–102(2), C.R.S. (2009), and C.A.R. 4.1, challenging the district court's suppression of evidence seized during the execution of a search warrant at the defendant's home. The district court found that the affidavit in support of the warrant failed to establish probable cause, largely because it failed to identify the person or agency conducting the audit from which the allegations of criminal activity were derived and because the records that were evaluated in the audit and sought pursuant to the warrant appeared to be several years old.

When considered in the totality of the circumstances, the affidavit provided a substantial basis to believe the information it contained was reliable, and there was a reasonable probability that evidence of the criminal activity it alleged would still be found at the defendant's home. The district court therefore erred in granting the motion to suppress. The suppression order is reversed, and the case is remanded for further proceedings.

## I.

Following the seizure of both documentary and real evidence (including contraband) during a search of his home, the defendant was

charged with theft, embezzlement of public property, failing to disclose a conflict of interest, first degree official misconduct, and multiple counts of possessing explosive or incendiary devices. He moved to suppress the evidence, alleging that the affidavit in support of the search warrant failed to establish probable cause. After hearing the motion and making written findings of fact and conclusions of law, the district court granted it.

The application for a search warrant and supporting affidavit were prepared by an investigator for the district attorney's office. The affiant indicated that the defendant was the Director of an organization called the Western Forensic Law Enforcement Training Center, which was formed at Colorado State University–Pueblo, through funding provided by a grant from the National Institute of Justice Crime Laboratory Improvement Program, with a mission of training and assisting law enforcement agencies in Colorado with forensic analysis. The affiant asserted that an audit of the defendant's program was conducted for the period between September 2003 and December 2006, covering its various expenditures and including all accounts for which the defendant had signature authority. Over four, single-spaced, typewritten pages, the affidavit detailed various findings of irregularities uncovered in the audit, including such things as the failure of the defendant to disclose his interest in a corporation operated by him and his wife from their home, from which questionable sales were made to the program; various purchases from the defendant's corporation of materials that could not be located by the auditor; travel and other expenses improperly billed to the University; and records indicating the defendant's outside compensation for times during which he was also being compensated by the University.

Uncontested testimony at the suppression hearing also indicated that the defendant was a retired agent and explosives expert for the Colorado Bureau of Investigation. While the warrant was being executed, the defendant gave a lengthy statement concerning his activities. He discussed his role as the Director of the Center, the process through which it received federal funding, and his responsibilities regarding the creation of its budget. He also briefly discussed the corporation operated by him and his wife and confirmed that he was its President. He admitted that this corporation made a profit through the sale of merchandise to the University. The defendant declined to answer questions regarding any conflict of interest without first discussing the matter with his lawyer. The defendant also discussed four or five trips he took related to consulting employment for which he was reimbursed by private organizations or law enforcement in addition to federal grant funds.

The district court found the affidavit deficient for two separate reasons. First, it found that the failure of the affidavit to set forth the identity of the person or agency conducting the audit, along with its failure to allege any corroboration of the information contained in the audit, precluded any meaningful assessment of the auditor's veracity or basis of knowledge, or the reliability of the information he provided. Second, it found that an audit concluded more than two years before the application for a search warrant did not provide sufficiently current information to justify a finding of probable cause to believe a search would still produce evidence of criminal activity. It therefore suppressed everything found during the search of the defendant's home.

The People immediately appealed to this court, pursuant to the provisions of section 16–12–102, C.R.S. (2009), and C.A.R. 4.1.

## II.

It is now firmly established that the Fourth Amendment exclusionary rule does not extend to evidence seized by law enforcement officers while executing, in objectively reasonable good faith, a judicially authorized warrant. *U.S. v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *People v. Gall*, 30 P.3d 145, 150 (Colo.2001). We have also long made clear, however, that the good faith exception to the exclusionary rule must be asserted by the prosecution at the suppression hearing or reliance on it will be considered waived. *People v. Donahue*, 750 P.2d 921, 923 (Colo.1988). Because the rec-

ord certified to us contains no indication that the applicability of the good faith exception was either alleged by the prosecution or resolved by the district court, we decline to address it on appeal.

■ Public policy encouraging the use of warrants nevertheless dictates that probable cause be reviewed with deference to issuing magistrates, and therefore the appropriate question for a court considering a search authorized by warrant is whether the issuing magistrate had a substantial basis for issuing the search warrant, as distinguished from simply whether the reviewing court would have found probable cause in the first instance. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Gall,* 30 P.3d at 150. Furthermore, "probable cause" itself need not satisfy any rigid, hypertechnical requirements but is a "practical, nontechnical conception," involving common-sense conclusions about human behavior. *Gates,* 462 U.S. at 239, 103 S.Ct. 2317; *People v. Polander,* 41 P.3d 698, 702 (Colo.2001). It has been referred to as a "fluid concept," turning on the assessment of probabilities in particular factual contexts that are not reducible to a neat set of legal rules. *Id.* Even the probable cause determination itself must therefore include consideration of the totality of the circumstances.

■ In addition to the content of the information asserted in the affidavit, a totality-of-the-circumstances analysis necessarily requires some assessment of the reliability of the information. Both the credibility of any sources of incriminating information and the way those sources acquired that information—their basis of knowledge—are unquestionably important in determining whether the information they provide should be considered sufficiently reliable to be acted upon. *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Although it once appeared that these two concerns might be treated as independent prerequisites to the inclusion of any particular information in the calculus of probable cause, more than a quarter century ago the Supreme Court made clear that they "were intended simply as

guides," and that each need not be satisfied in any technical sense. *Gates,* 462 U.S. at 239, 103 S.Ct. 2317; *Polander,* 41 P.3d at 702. Rather than being accorded independent status, these two elements are better understood as relevant considerations in the totality-of-circumstances analysis: a deficiency in one may be compensated for by a strong showing as to the other, or for that matter, by some other indicia of the information's reliability altogether. *Polander,* 41 P.3d at 702; *see Gates,* 462 U.S. at 233, 103 S.Ct. 2317.

Under this kind of analysis, even the tip of a completely anonymous informant might be considered reliable, as long as sufficiently unique details could be corroborated. *Alabama v. White,* 496 U.S. 325, 331, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Gates,* 462 U.S. at 239, 103 S.Ct. 2317. Quite apart from corroboration, however, it has long been recognized that assessing the veracity of average citizens who report crime does not pose the same difficulty as assessing the veracity of informants from the criminal milieu. *Polander,* 41 P.3d at 703; *see generally,* 2 Wayne R. LaFave, Search and Seizure § 3.4 (3d ed. 1996). By the same token, even without a specific description of the source's basis of knowledge, it may be patently clear from its nature alone that it could only have been acquired through first-hand observation or in some similarly reliable way. *See Spinelli,* 393 U.S. at 413, 89 S.Ct. 584 (referring to the detail in *Draper v. U.S.,* 358 U.S. 307, 309, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), as providing a suitable benchmark); *see generally* 2 Wayne R. LaFave, Search and Seizure § 3.3(e) (self-verifying detail).

■ Although the affidavit in this case was hardly a model to be emulated, failing as it did to identify the person conducting the audit, specify the timing and circumstances of its commission or attach a copy of the audit in question, under the unique circumstances presented here, the reliability of the information contained in the affidavit was nevertheless discernible from its nature and detail alone. Large portions of the affidavit were clearly excerpted from the audit. They provided specific detail available only to someone given access to confidential records

of the University, the Institute, and the Training Center, including references to specific dates, locations, and amounts. These excerpts also included numerous inferences from records and receipts that could only have been drawn by someone professionally trained in accounting and auditing techniques, and with the cooperation of, and perhaps employment by, some or all of these three business entities.

While the district court was needlessly forced to scour the affidavit for implications that should have been made explicit, it nevertheless erred in relegating this information to the status of an uncorroborated tip from an anonymous informant. Although the auditor may not have been specifically named or questioned about his basis of knowledge, a great deal could be inferred about both prongs of the *Aguilar–Spinelli* paradigm. Far from having the hallmarks of "a rumor circulating in the underworld" or a malicious fabrication, this information, by its very nature, was almost certainly acquired by firsthand observation of the relevant documents, in the regular course of business, for purposes other than criminal investigation. Because the audit described irregularities in the defendant's purchases and accounting practices consistent with criminal conduct such as theft, embezzlement of public property, and official misconduct, the district court should have found that the affidavit provided the issuing magistrate with a substantial basis for believing the defendant's business records, at least at the time of the audit, would evidence criminal activity.

██ Unlike the actual seizure of items connected to the commission of a crime, however, a search for otherwise seizable items must be supported by probable cause to believe not only that those items have been at the place to be searched but that they will probably be found there at the time the search can be conducted. *See People v. Miller,* 75 P.3d 1108, 1112 (Colo.2003); *see also People v. Erthal,* 194 Colo. 147, 148, 570 P.2d 534, 534 (1977). Whether information about particular contraband, instrumentalities, fruits, or even "mere evidence" of a crime has become "stale," however, is not simply a question of the passage of time. *See United States v. Rahn,* 511 F.2d 290, 292 (10th Cir. 1975). Rather, it is a function of a host of variables unrelated to the calendar, chief among which are the nature of the criminal activity at issue and the way the items being sought are related to it. *See People v. Lubben,* 739 P.2d 833, 836 (Colo.1987).

Unlike a half-smoked marijuana cigarette in an ashtray at a cocktail party, which may well be stale the day after the cleaning lady has been in, *see Andresen v. State,* 24 Md. App. 128, 172, 331 A.2d 78, 104 (1975), or the proceeds of a convenience store robbery, which are likely to be spent or co-mingled almost immediately after the crime, business records, created specifically for tax or other accounting purposes, would normally be maintained at least until those purposes had been served. *See United States v. Word,* 806 F.2d 658, 662 (6th Cir.1986) (business records prepared and kept in the ordinary course of business defy claims of staleness); *see also United States v. Brownderville,* No. 98–1374, 1999 WL 618067, at *4 (6th Cir. Aug.2, 1999); *see also United States v. Singh,* 390 F.3d 168, 182 (2d Cir.2004); *United States v. Farmer,* 370 F.3d 435, 439–40 (4th Cir.2004); *United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents,* 307 F.3d 137, 148 (3d Cir.2002). In the absence of some indication that they were no longer needed in the normal course of business or that someone with access had become aware that their continued existence posed too great a risk, one might reasonably expect records or accounts of this kind to be maintained at a regular place of business for relatively long periods of time. *See United States v. McManus,* 719 F.2d 1395, 1400–01 (6th Cir.1983) (old business records could reasonably be expected to be found at the defendant's home or place of business for which the search warrant was issued).

██ Although the records referred to in the audit in this case appear to have been several years old, this time differential is not abnormal or unexpected for an audit. The records themselves involved accountings for grants, expenditures, reimbursements, and salaries acquired or made under the auspices of public educational and law enforcement institutions. And while the affidavit at times

failed to carefully distinguish information in the audit from information acquired elsewhere, a fair reading indicates that the affiant had personal knowledge or learned from the Secretary of State and Pueblo County Assessor of the defendant's continued and current use of the Candytuft address as both a residence and business address for the private business venture operated by him and his wife. Nothing in the record suggested that the defendant had been confronted with the findings of the audit or had otherwise acquired cause to attempt to either hide or destroy the relevant computer records, even if that had been possible.

Despite the length of time between the auditor's observation of the records in question and the search for which a warrant issued, there was every reason to believe the items for which the search was judicially authorized would still be in the place to be searched, at the time of the search. Under these circumstances, the district court erred in disregarding the audit's information as stale and finding that it could not have provided a substantial basis for issuing the warrant executed in this case.

### III.

Although the sufficiency of the affidavit in this case is far from obvious, we conclude that it provided a substantial basis to believe that items connected to a crime would be found at the defendant's home, at the time of the search. The district court therefore erred in suppressing the evidence seized during the judicially authorized search of the defendant's home. Its order of suppression is reversed, and the case is remanded for further proceedings.