Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 10, 2019

**2019 CO 48**

**No. 15SC935,** *People v. Morehead*—Searches, Seizures, and Arrests—Law of the
Case—Mandate and Proceedings in Lower Court

The People petitioned for review of the court of appeals' judgment reversing

Morehead's convictions for possession and possession with intent to distribute a

controlled substance, as well as seven gambling-related charges. The intermediate

appellate court held that the search of the defendant's residence violated the Fourth

Amendment. The appellate court ordered all the evidence seized from the defendant's

residence suppressed, and it reversed his convictions; but in addition, it mandated that

the trial court be barred from considering new arguments for admission of that

evidence on retrial.

The supreme court holds that because the scope and conduct of the suppression

hearing are within the sound discretion of the trial court, a trial court on retrial may,

except where bound by the ruling of a higher court, determine the appropriateness of

entertaining new and different motions, evidence, arguments, or theories for or against

suppression of contested evidence.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 48

**Supreme Court Case No. 15SC935**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 12CA715

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Mikel Morehead.

## Judgment Affirmed in Part and Reversed in Part
*en banc*
June 10, 2019

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
L. Andrew Cooper, Deputy Attorney General
Elizabeth Rohrbough, Senior Assistant Attorney General
*Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Public Defender
Meghan M. Morris, Deputy Public Defender
*Denver, Colorado*

**CHIEF JUSTICE COATS** delivered the Opinion of the Court.
**JUSTICE GABRIEL** dissents, and **JUSTICE HOOD** joins in the dissent.

¶1     The People petitioned for review of the court of appeals' judgment reversing Morehead's convictions for possession and possession with intent to distribute a controlled substance, as well as seven gambling-related charges. *See People v. Morehead*, 2015 COA 131, ¶ 52, __ P.3d __.  As pertinent to the issue before this court, the trial court denied the defendant's motion to suppress evidence discovered in his home, ruling that the officers' initial entry of the home with the permission of the defendant's former girlfriend was lawful and that the evidence seized in a subsequent search was conducted pursuant to a warrant that was supported by probable cause and was not misleading.  By contrast, the intermediate appellate court found that the defendant's former girlfriend lacked either actual or apparent authority to consent to the officers' initial entry of the defendant's home, during which they observed gambling machines. It also declined, however, to either entertain arguments on appeal that the evidence seized in the subsequent warranted search was not the fruit of the initial entry or that its seizure at least came within an exception to the exclusionary rule, or to remand for findings concerning those issues, reasoning that the prosecution was barred from raising any such arguments for not having asserted them at any of the numerous suppression hearings.  Instead, the appellate court ordered all the evidence seized from the defendant's residence suppressed, and it reversed his convictions; but in addition, after supplemental briefing, it mandated that the trial court be barred from considering new arguments for admission of that evidence on retrial.

¶2     Because the court of appeals erred in restricting the trial court's discretion to entertain additional evidence or consider additional arguments concerning the seizure

2

of this evidence on retrial, that portion of the judgment of the court of appeals is reversed.

## I.

¶3     Mikel Morehead was convicted of possession of a controlled substance, possession with intent to distribute a controlled substance, and seven gambling-related charges. Prior to trial, he moved to suppress all evidence derived from searches of his residence by the police. Following several evidentiary hearings on his motion, the trial court made lengthy written findings of fact and conclusions of law and denied it.

¶4     The court's findings of fact indicated that after arresting the defendant for domestic violence, the police were informed, in great detail, of gambling and drug distribution being conducted by the defendant, by a woman with whom he had a twelve-year intimate relationship and who had until recently resided with him. Earlier on the day of the arrest, she had come back to recover her property. After hearing the former girlfriend's accusations but before returning to the residence with her, the police conducted surveillance of the residence and observed what they considered to be suspicious behavior by a person whom the girlfriend described as a former customer. With her permission but without a warrant, the officers entered the residence with her and observed gambling devices. Before proceeding further, they obtained a warrant, relying only on information and observations other than what they observed inside the residence, and upon a subsequent search, discovered and seized methamphetamine and other evidence of the unlawful distribution of drugs and of illegal gambling.

3

¶5    Indicating that the issues raised by the defendant were whether the girlfriend's consent was valid, whether the search warrant was supported by probable cause, and whether in any event the affidavit was misleading by material omission, the trial court addressed each in turn and denied the motion to suppress.  More specifically, in its lengthy written analysis and conclusions, it found both actual and apparent authority for the girlfriend's consent, probable cause for the affidavit based on the girlfriend's statements, as corroborated by police surveillance, and the absence of any material omission, despite the affidavit's failure to reference the fact that the police had already entered the defendant's residence or that the defendant was in jail at the time of the surveillance.  In the absence of finding any Fourth Amendment violation at all, the trial court did not turn to the applicability of, or exceptions to, the exclusionary remedy for a constitutional violation.

¶6    On appeal of the defendant's convictions, the court of appeals reversed.  Characterizing the case as one presenting several novel questions in the law of third-party consent, it ultimately determined that the trial court erred in finding the prosecution had proved either actual or apparent authority, and it concluded that the warrantless entry of the defendant's house therefore violated the Fourth Amendment.  Without commenting on the trial court's ruling that the subsequent search pursuant to a warrant was itself valid, or specifying the relationship between the seized evidence and the earlier unlawful entry of the residence, the court of appeals declined to entertain the prosecution's assertion that the evidence seized pursuant to this valid warrant was not the fruit of the earlier entry at all and if it were, that it would nevertheless have been

4

admissible under an exception to the exclusionary rule. The appellate court reasoned that these arguments could not be entertained on appeal because the prosecution had not made either of these assertions before the trial court.

¶7    The appellate court did, however, find that the prosecution failed to prove the erroneous admission of the evidence in question was harmless beyond a reasonable doubt and that, although an appellate court would be permitted to affirm a trial court's order denying suppression on any grounds supported by the record below, the record in this case contained no evidence that the officers would have sought a warrant but for being prompted by what they observed on their first unlawful entry. In addition, the court of appeals requested supplemental briefing on the question whether the prosecution should be permitted *on retrial* to raise arguments regarding what the court referred to as "attenuation and exclusionary rule exceptions," and it concluded that the prior jurisprudence of this court barred the prosecution from doing so. In remanding for a new trial, the court of appeals therefore mandated that the trial court not consider new arguments for admission of the evidence seized from the defendant's residence.

¶8    We granted the People's petition for a writ of certiorari solely on the question whether the court of appeals properly limited the trial court's authority upon retrial to consider additional arguments concerning suppression of this evidence.

**II.**

¶9    It has long been established that jeopardy does not bar retrial after reversal of a defendant's conviction for legal error, for the reason that the defendant is held to be in "continuing jeopardy" throughout this process, reflecting the reality that until a final

5

judgment on retrial, the "criminal proceedings against an accused have not run their full course." *Bravo-Fernandez v. United States*, 580 U.S. __, __, 137 S.Ct. 352, 363 (2016). For largely the same reasons—that the judgment of the first trial has never become final—preclusive doctrines related to res judicata and collateral estoppel are similarly inapplicable to a retrial. *See S.O.V. v. People in Interest of M.C.*, 914 P.2d 355, 359 & n.4 (Colo. 1996) (distinguishing res judicata and collateral estoppel from law of the case). As a general matter, following the reversal of a criminal conviction and remand for a new trial, neither the defendant nor the government is precluded from presenting new evidence. *United States v. Shotwell Mfg. Co.*, 355 U.S. 233, 235–36, 243 (1957) ("It is undeniable, of course, that upon appellate reversal of a conviction the Government is not limited at a new trial to the evidence presented at the first trial, but is free to strengthen its case in any way it can by the introduction of new evidence."); *People v. Duncan*, 500 P.2d 137, 139 (Colo. 1972) ("Had we reversed the case and ordered a new trial, the additional evidence here complained of would have been admissible on the same issue."). To the extent different evidence and legal arguments concerning prior rulings in the case are not precluded by specific procedural or evidentiary rules, their allowance is therefore governed by the law of the case doctrine.

¶10    While the so-called "mandate rule" is not without its own nuanced interpretations, it is at least clear that the pronouncement of an appellate court on issues presented to it, as well as rulings logically necessary to its holding, become the law of the case. *People v. Roybal*, 672 P.2d 1003, 1005 (Colo. 1983). At least in the absence of certain unusual circumstances, like newly discovered evidence, the law of the case as

6

established by an appellate court must be followed in subsequent proceedings before the trial court. *See id.* (citing *Cache La Poudre Reservoir Co. v. Water Supply & Storage Co.*, 62 P. 420 (1900)). By contrast, however, the law of the case doctrine is more flexible in its application to reconsideration by the trial court making a decision. In this context, law of the case "merely expresses the practice of courts generally to refuse to reopen what has been decided," and has been described as a "discretionary rule of practice." *People ex rel. Gallagher v. Dist. Court*, 666 P.2d 550, 553 (Colo. 1983) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912) and *United States v. U.S. Smelting, Ref. & Mining Co.*, 339 U.S. 186, 199 (1950), respectively).

¶11    In this case, the court of appeals found that the initial entry by the police into the defendant's residence was not justified by the consent of anyone with either actual or apparent authority, and it therefore found that entry to have been a violation of the Fourth Amendment. We have not accepted for further review the People's challenge to that ruling, and it therefore becomes the law of the case, which under normal circumstances is binding on the trial court upon retrial.[1] We have, however, accepted for further review the court of appeals' order that the trial court is barred from entertaining new arguments for the admission of the evidence seized from the

---

[1] Although not expressly raised or ruled on by the trial court, the prosecution argued in the alternative in the appellate court that the evidence seized from the defendant's residence was seized with his consent. In rejecting that argument, the court of appeals included in its rationale that any such purported consent was clearly not attenuated from the officers' prior illegal entry. To the extent the court of appeals has determined this question of attenuation, it has similarly become the law of the case.

7

defendant's residence. With regard to this order, the court of appeals does not appear to dispute the authority of a trial court to reconsider its prior rulings or entertain new theories, evidence, or arguments upon retrial generally, but simply misconstrues the rules of criminal procedure and prior holdings of this court to require trial courts to hear, before denying a motion pursuant to Crim. P. 41, all alternate arguments and evidence relevant to the motion, including even those concerning exceptions to the exclusionary remedy for a constitutional violation, whether or not the court believes it has already heard enough to deny the motion or whether it finds a constitutional violation at all.

¶12     Motions to suppress evidence discovered or seized in violation of constitutional protections against unreasonable searches are governed by Rule 41 of the Colorado Rules of Criminal Procedure. The Rule requires that a motion to suppress be made and heard before trial unless the defendant lacks the opportunity or knowledge of the grounds for such a motion or the court discretionarily permits the motion at trial, reflecting the preference in this jurisdiction for the resolution of constitutional suppression issues in time for the parties to prepare their respective cases, and in the event evidence is suppressed, to permit the prosecution an opportunity to appeal the question prior to jeopardy's having attached in the case. Whether the challenged search was authorized by warrant or not, the defendant, as the moving party, bears the burden of going forward with a showing that: (1) the property was illegally seized without a warrant; (2) the warrant is insufficient on its face; (3) the property seized is not that described in the warrant; (4) there was not probable cause for believing the existence of

8

the grounds on which the warrant was issued; or (5) the warrant was illegally executed. *People v. Cunningham*, 2013 CO 71, ¶ 11, 314 P.3d 1289, 1291 (characterizing the requirements of Crim. P. 41). Only if the defendant satisfies this burden is it then upon the prosecution to rebut the allegations of the motion that would otherwise require suppression. *Id.* at ¶ 12, 314 P.3d at 1291.

¶13    Nevertheless, we have made clear that the trial court has great discretion in managing the suppression hearing, including prescribing the order of evidence and related matters. The trial court "may determine the most expeditious way to proceed, based on the motion to suppress, record documents, any stipulation of the parties, the agreed upon or contested issues identified by the defense and the prosecution, and the need to take additional evidence not already in the record as long as a party is not unfairly prejudiced" by the procedure it orders. *Id.* at ¶ 13, 314 P.3d at 1292. We have never suggested that a trial court must entertain all evidence and possible arguments opposing a motion to suppress before ruling on any particular aspect of that motion or, for that matter, before simply determining that the court is sufficiently apprised concerning the defendant's allegations to deny the motion in its entirety. This is especially true with regard to entertaining argument against the applicability of, or for exceptions to, the exclusionary remedy for a constitutional violation, when the trial court considers itself sufficiently apprised to rule that no violation has occurred in the first place. The scope and conduct of the suppression hearing are within the sound discretion of the trial court, and the trial court is therefore in the best position to

determine whether the parties are at fault for having failed to preserve arguments on a matter the court considered to be at issue before it.

¶14 Our prior decisions declining to entertain particular arguments on appellate review of suppression rulings or declining to remand for additional evidence or findings in any particular case are in no way to the contrary. Our holding in *Moody v. People*, 159 P.3d 611 (Colo. 2007), upon which the court of appeals heavily relied, implied virtually nothing about the conduct of suppression hearings, much less about a trial court's authority to entertain new arguments or evidence on retrial after the reversal of a conviction. In *Moody* we merely precluded appellate courts from supporting a trial court's ruling denying a suppression motion with testimony presented later at the trial itself—evidence which was not and could not have been considered by the trial court in ruling as it did. *Id.* at 614. As we indicated there, we held as we did in that case largely to avoid prejudice to the defendant that would result from permitting the prosecution to continue, without notice to the defendant, litigating the suppression issue after it had already been ruled upon. *Id.*

¶15 Similarly, those of our prior cases relied on by the court of appeals in which we declined to entertain, or remand for further development, arguments either insufficiently raised or developed in the trial court, were expressly decided on the basis of the circumstances of each of those cases and imply little if anything about the propriety of remanding for further findings by a suppression court generally, much less about the authority of a trial court on retrial following the defendant's successful challenge to an order *denying* suppression and his subsequent conviction. *See People v.*

10

*Null*, 233 P.3d 670, 681 (Colo. 2010) (declining in an original proceeding to order that the state be given another opportunity to attempt to prove extraordinary circumstances justifying failure to honor Null's request for blood test where the state failed to meet its evidentiary burden at the hearing on the matter); *People v. Syrie*, 101 P.3d 219, 223 (Colo. 2004) (declining to consider on appeal newly raised argument against suppression, as to which trial court was never given a chance to rule); *People v. Quintero*, 657 P.2d 948, 951 (Colo. 1983) (declining to remand for hearing on inevitable discovery where existing record demonstrated, under the correct legal standard, the futility of that claim). While these cases may demonstrate this court's reluctance to consider or initiate further proceedings concerning arguments not adequately developed below, none purports to control the arguments that can be heard by a trial court upon retrial.

¶16    Both this court and the United States Supreme Court have, when appropriate, ordered limited remand for further findings or the presentation of additional evidence against suppression. *See, e.g.*, *Shotwell*, 355 U.S. at 243, 245–46 (granting limited remand for further evidence against suppression, in part because prosecution would be permitted to offer same evidence at retrial if the Court instead reversed defendant's conviction); *Duncan*, 500 P.2d at 139 (upholding trial court's taking new evidence on remand for additional findings concerning suppression, noting that same evidence would have been admissible on retrial); *cf. Giordenello v. United States*, 357 U.S. 480, 488 (1958) (declining to rule on newly raised argument that search would have been constitutional even if warrant were defective or to remand for further findings, where

11

doing so would have been unfair to defendant, but expressly leaving open possibility that the same argument could be raised by prosecution at subsequent new trial).

### III.

¶17 It is clear from the record below that the evidence in question was seized pursuant to a warrant supported by the statements of the defendant's former girlfriend and police surveillance of the defendant's house alone, without reference to any observations made inside the defendant's residence. Because the intermediate appellate court did not reverse the trial court's finding that the affidavit for search was supported by probable cause and was otherwise valid, the evidence in question would be suppressible only to the extent it was first discovered during the officers' unlawful entry into the defendant's residence and its later seizure pursuant to the valid warrant was not wholly independent of that earlier unlawful entry. *See Murray v. United States*, 487 U.S. 533, 542 (1988); *People v. Schoondermark*, 759 P.2d 715, 718–19 (Colo. 1988). Although no observations from the earlier entry were relied on to establish probable cause for the warrant, the subsequent search could nevertheless be considered wholly independent of the unlawful entry only upon a specific finding that it was not in fact prompted by what the officers had seen during that initial entry. *Murray*, 487 U.S. at 542; *Schoondermark*, 759 P.2d at 719. Because the trial court found the earlier entry to be lawful, it was never faced with the question whether the officers would have pursued a warrant but for their initial entry and observations.

¶18 Unlike prior cases in which it has been apparent that the argument raised on appeal was clearly at issue but not advanced at the suppression hearing, or in which the

12

record of the suppression hearing adequately disposed of the new argument despite its never having been explicitly asserted, the question whether the officers would have pursued a warrant to search the defendant's residence without being prompted to do so by what they observed during the initial, unlawful entry is very much a distinct and live issue. Faced with virtually the identical question, the Supreme Court in *Murray* and this court in *Schoondermark* remanded to give the trial court an opportunity to make a specific finding on that question. *Murray*, 487 U.S. at 543–44; *Schoondermark*, 759 P.2d at 719–20.

¶19 Where the question before the appellate court is not whether a limited remand should be ordered in lieu of reversal but rather whether the question of officer motivation may be entertained on retrial, the law of the case doctrine places that determination squarely within the discretion of the trial court. Especially where its ruling on the suppression motion at the first trial has been disapproved, it is for the trial court, except where bound by the ruling of a higher court, to determine the appropriateness of entertaining new and different motions, evidence, arguments, or theories by either party.

**IV.**

¶20 Because the court of appeals erred in restricting the trial court's discretion to entertain additional evidence or consider additional arguments concerning the seizure of this evidence on retrial, that portion of the judgment of the court of appeals is reversed.

**JUSTICE GABRIEL** dissents, and **JUSTICE HOOD** joins in the dissent.

JUSTICE GABRIEL, dissenting.

¶21     We granted certiorari to decide whether the division below erred in concluding that, on remand, the trial court could not consider additional arguments regarding whether the exclusionary rule requires evidence to be suppressed.  The majority now concludes that the division erred in restricting the trial court's discretion to entertain such additional arguments (and also additional evidence).  Maj. op. ¶¶ 2, 19–20.  In so ruling, the majority essentially concludes that whenever a court of appeals division orders a new trial based on an improperly denied defense suppression motion, the People are entitled to re-open the suppression hearing in order to present new evidence and arguments that they neglected to raise in the prior hearing.  Because I believe that such a ruling is inconsistent with our settled precedent, and because this ruling will needlessly open the door to the relitigation of innumerable issues upon any remand for a new trial, I respectfully dissent.

## I.  Factual Background

¶22     In this case, the trial court conducted three evidentiary hearings on Morehead's motion to suppress and ultimately denied that motion in a lengthy order.  In the course of the evidentiary hearings, the People vigorously contested the motion and were given a full and fair opportunity to present whatever evidence and to make whatever arguments they wished to make.  Although the People presented a number of arguments against Morehead's motion, they did not argue that the evidence discovered during the execution of the later warrant-based search was admissible under the attenuation doctrine or because it would have been inevitably discovered, even though

1

the evidence necessary to make these arguments was available and, indeed, was known to the People.

¶23     As the majority notes, the People prevailed in the trial court, but on appeal, the division reversed the trial court's order and remanded the case for a new trial. Now, having lost the fully and finally litigated suppression motion, the People seek to relitigate that motion by presenting arguments that they could have advanced—but chose not to advance—at the prior hearing. Unlike the majority, I do not believe that our precedent affords the People such a second bite at the apple.

## II.  Analysis

¶24     I begin by discussing our settled precedent in this area of law, and I then apply the pertinent legal principles to the facts of this case.

¶25     Under the law of the case doctrine, "prior relevant rulings made in the same case are to be followed unless such application would result in error or unless the ruling is no longer sound due to changed conditions." *People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999). Although trial courts have discretion to apply the law of the case doctrine to their own prior rulings, *see id.*, "[t]he law of the case as established by an appellate court must be followed in subsequent proceedings before the trial court," *People v. Roybal*, 672 P.2d 1003, 1005 (Colo. 1983). This principle "serves the dual purpose of protecting against the reargument of settled issues and assuring the adherence of lower courts to the decisions of higher courts." *Id.*

¶26     Until today, we have consistently applied these principles in the context of suppression motions.

2

¶27    For example, in *Roybal*, 672 P.2d at 1004, the People brought an interlocutory appeal from a district court order suppressing a blood alcohol test from use as evidence in the retrial of a defendant on a vehicular assault charge.  After the defendant had been involved in a traffic accident, the police noticed that he smelled of alcohol and placed him in a police car, where, after being advised of his *Miranda* rights, he gave a written statement about the accident.  *Id.*  The police then handcuffed and transported the defendant to the police station, where they administered a blood alcohol test.  *Id.*

¶28    The defendant subsequently moved to suppress the statements that he had made, arguing, among other things, that they were the products of an illegal arrest.  *Id.* He also filed two separate motions to suppress the evidence concerning the blood alcohol test, asserting a due process violation because the blood samples had been destroyed and contending that the evidence was inadmissible because he had not consented to that test.  *Id.*

¶29    The trial court granted the defendant's motion to suppress his statements but denied the motions to suppress the blood test.  *Id.*  The prosecution then filed an interlocutory appeal in this court, and we held that the prosecution had not carried its burden of proving probable cause to justify the arrest.  *Id.*  We therefore affirmed the suppression of the defendant's statements as the products of an invalid arrest and remanded for further proceedings.  *Id.*

¶30    On remand, the defendant moved to suppress the blood alcohol test as the fruit of an illegal arrest.  *Id.* at 1005.  The prosecution responded by seeking to relitigate the issue of probable cause, offering to present the testimony of witnesses who had not

3

appeared at the earlier hearing. *Id.* Based on the law of the case doctrine, the trial court rejected this effort, and after a second interlocutory appeal, we affirmed. *Id.* at 1005–06. In doing so, we rejected the prosecution's argument—which mirrors one of the arguments that the People make here—that applying the exclusionary rule and denying a second hearing on probable cause would corrupt the truth-seeking process. *Id.* at 1006. We also noted that the prosecution had offered no explanation for why it did not present probable cause witnesses at the first hearing. *Id.* We thus concluded, "[U]nless suppression hearings are to be conducted 'by installment,' as the trial court put it, the prosecution must be prepared to abide the consequences of an adverse ruling when it elects not to offer available probative evidence." *Id.* This was particularly true given that the evidence that the prosecution subsequently wished to adduce was available at the time of the first hearing. *Id.* at 1006 & n.7.

¶31  We noted a similar principle in the more recent case of *People v. Crippen*, 223 P.3d 114, 116–17 (Colo. 2010). There, the district court had suppressed evidence seized during the execution of a search warrant at the defendant's home, finding that the affidavit in support of the warrant had failed to establish probable cause, and the People appealed. *Id.* at 115. Although we ultimately reversed the district court's order on the merits, we began by noting that the People initially sought reversal based on the good-faith exception to the exclusionary rule, an argument that the People had not made in the district court. *Id.* at 116-17. We stated, "We have . . . long made clear . . . that the good faith exception to the exclusionary rule must be asserted by the prosecution at the suppression hearing or reliance on it will be considered waived." *Id.*

at 116. Noting that the prosecution had not alleged the applicability of the good-faith exception in the district court and that the district court therefore had not resolved this issue, we declined to address it on appeal. *Id.* at 116–17.

¶32 In my view, the principles set forth in these cases apply with equal force here. The People concede that all of the facts and evidence necessary to advance the arguments that they now wish to make were available to them at the time of the previous three-day suppression hearing. Yet, the People chose not to make these arguments, and they offer no compelling reason for their decision not to do so. In these circumstances, I would follow the principle that we articulated in *Roybal* over three decades ago: "[T]he prosecution must be prepared to abide the consequences of an adverse ruling when it elects not to offer available probative evidence." *Roybal*, 672 P.2d at 1006.

¶33 Allowing the People instead to relitigate the suppression motion at issue by proffering new evidence and argument would improperly allow suppression hearings to be conducted by installment, and I do not believe that our precedent countenances such a result. *Id.*; *see also People v. Null*, 233 P.3d 670, 681 (Colo. 2010) (refusing to give the prosecution "a second bite at the apple" when it failed to carry its burden of showing extraordinary circumstances to justify the failure to honor a DUI defendant's statutory right to receive a blood test).

¶34 To hold otherwise, as the majority does today, needlessly opens the door to the relitigation of a virtually unlimited range of issues, a result that I fear will impose an intolerable burden on our trial courts. For example, under the majority's rule, in any

5

case in which the prosecution prevails in overturning on interlocutory appeal an order suppressing evidence, the defendant should be permitted to file new and potentially serial motions to suppress, advancing different arguments in support of suppression in the hope that one will eventually succeed. And if the defendant prevails on any such motion, then the People would be able to file further interlocutory appeals, all resulting in further and inordinate delays in the trial proceedings.

¶35 Likewise, it is not clear to me that the majority's new rule would be limited to suppression motions or even to criminal cases. If the granting of a new trial allows the parties to "start over," as the majority suggests, then in any case in which a new trial is ordered, the parties should be permitted to renew every motion that the trial court had previously decided, perhaps in front of a different district judge, in the hopes of getting a more favorable ruling.

¶36 Such scenarios strike me as contrary to our long-settled precedent on law of the case and on claim and issue preclusion. *See Foster v. Plock*, 2017 CO 39, ¶¶ 12–13, 394 P.3d 1119, 1122–23 (discussing the elements of claim and issue preclusion); *Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005) (noting that the claim preclusion doctrine precludes the relitigation of matters that have been decided *or that could have been raised* in a prior proceeding). As a result, I would not adopt the broad rule that the majority announces today.

¶37 In reaching this conclusion, I am not persuaded by the People's contention that a rule barring them from relitigating on remand a suppression motion that they lost after being given a full and fair opportunity to litigate will be problematic because it will

force them to raise all of their arguments the first time. I perceive no significant or unfair burden in this. Indeed, such a requirement is fully consistent with the above-described principles of the law of the case doctrine and of claim and issue preclusion. Moreover, parties frequently must make strategic choices as to the arguments that they will present in support of or in opposition to a given motion. As we have long recognized, however, a party cannot make such strategic choices and then seek to try an alternative strategy merely because his or her first choice proved unsuccessful. *Roybal*, 672 P.2d at 1006.

### III. Conclusion

¶38 The People had a full and fair opportunity to litigate Morehead's suppression motion, and they have not shown either changed circumstances or any evidence that they did not know and reasonably could not have discovered prior to the suppression hearing. In these circumstances, our settled precedent leads me to conclude that the People should not be permitted to relitigate the suppression motion at issue in order to present arguments that they could have presented when the matter was previously and fully heard.

¶39 Accordingly, I would affirm the judgment of the division below, albeit on different grounds, and therefore respectfully dissent.

I am authorized to state that JUSTICE HOOD joins in this dissent.

7