24CA0669 Hagerty v Luxury 04-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0669
City and County of Denver District Court No. 20CV33842
Honorable Jill D. Dorancy, Judge

Hagerty Insurance Agency, LLC, as subrogee of Robert W.J. Mortenson, and
Robert W.J. Mortenson,

Plaintiffs-Appellants,

v.

Luxury Asset Capital, LLC, a foreign limited liability company,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE GOMEZ
Fox and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

Dworkin, Chambers, Williams, York, Benson & Evans, P.C., Steven G. York,
Denver, Colorado, for Plaintiffs-Appellants

Campbell, Killin, Brittan & Ray, LLC, Bruce E. Rohde, Margaret R. Pflueger,
Denver, Colorado, for Defendant-Appellee

¶ 1    Robert W.J. Mortenson, a car enthusiast, purchased a Rolls Royce from Luxury Asset Capital, LLC (Luxury Asset), a pawnbroker, after the car's previous owner failed to pay a loan secured by the car.  Later, Mortenson discovered the car had previously been stolen.  Mortenson pursued a claim against Luxury Asset for breach of contract, and his insurer, Hagerty Insurance Agency, LLC (Hagerty), pursued a related claim for equitable subrogation based on its payment to Mortenson under an insurance policy.

¶ 2    The two plaintiffs, Mortenson and Hagerty, now appeal the judgment entered in favor of the defendant, Luxury Asset, after a trial to the court.  Specifically, they challenge the trial court's finding that the circumstances surrounding the transaction were sufficient to exclude the statutory warranty of title under section 4-2-312(2), C.R.S. 2024.  We reject their challenge and affirm the judgment.

## I.    Background

### A.    The Underlying Dispute

¶ 3    In 2019, Luxury Asset, a pawnbroker doing business in Colorado, provided a loan to Kathryn Lee Thompson secured by a

1

2015 Rolls Royce with a South Carolina title. Luxury Asset took possession of the car but agreed that Thompson could reclaim it by repaying the loan. When Thompson failed to make the required payments, Luxury Asset advertised the car for sale online.

¶ 4 Mortenson responded to the advertisement and negotiated the purchase of the car with a Luxury Asset representative. The two agreed on a purchase price of $127,000. Mortenson then paid to have the car transported from Georgia, where it was being stored, to his home in Nevada.

¶ 5 The Luxury Asset representative went to Nevada to complete the transaction and transfer the car title to Mortenson. Using a power of attorney that allowed the Luxury Asset representative to sign documents on behalf of Thompson, the representative and Mortenson executed a bill of sale transferring the car directly from Thompson (as seller) to Mortenson (as buyer). That bill of sale indicated that the car was sold "as is," with no express or implied warranties. The two also went to the Nevada Department of Motor Vehicles (DMV) to transfer the title from Thompson to Mortenson.

¶ 6 Unfortunately, however, a few months after the sale, the Nevada DMV notified Mortenson that the vehicle identification

2

number (VIN) on the car was forged and that a search using the authentic VIN from the car's onboard computer revealed that the car was stolen. The car was impounded, and Mortenson never recovered it. Mortenson had insured the car under a policy issued by Hagerty, which paid him the policy limit of $50,000.

¶ 7    Mortenson brought several claims against Luxury Asset, including a claim for breach of contract — specifically, breach of the warranty of good title. Hagerty also brought a claim for equitable subrogation against Luxury Asset.

¶ 8    On motions for summary judgment, the trial court determined, as a matter of law, that (1) Luxury Asset hadn't disclaimed the statutory warranty of title by specific language and (2) the warranty hadn't been disclaimed by the circumstances of the transaction. Accordingly, the court granted summary judgment for Mortenson on his breach of contract claim and for Hagerty on its equitable subrogation claim. The court denied summary judgment on Mortenson's remaining claims, which were later dismissed by stipulation of the parties.

## B. The First Appeal and Remand

¶ 9 In the first appeal, a division of this court affirmed in part and reversed in part the trial court's grant of summary judgment to Mortenson and Hagerty. *See Hagerty Ins. Agency, LLC v. Luxury Asset Cap., LLC*, 2023 COA 57 (*Hagerty I*).

¶ 10 As a matter of first impression, the division in *Hagerty I* determined that the statutory warranty of title imposed by section 4-2-312 cannot be excluded simply by contract language stating that a good is sold "as is" and without any express or implied warranties. *Id.* at ¶ 13. Instead, the division concluded that the warranty can be excluded only through more specific language. *Id.* at ¶¶ 14-20. Accordingly, the division affirmed the trial court's ruling that the warranty of title was not excluded by the language of the bill of sale. *Id.* at ¶ 21.

¶ 11 However, the *Hagerty I* division reversed the trial court's ruling as to whether the statutory warranty of title was excluded by the circumstances surrounding the transaction, as contemplated by section 4-2-312(2), concluding that there were disputed issues of fact precluding summary judgment on that issue. *Id.* at ¶¶ 22-31.

4

Accordingly, the division remanded the case for further proceedings consistent with its decision. *Id.* at ¶¶ 31-32.

¶ 12     On remand, the trial court held a bench trial, after which it entered written findings of fact and conclusions of law. The court found that the factual circumstances surrounding the transaction were sufficient to give Mortenson reason to know that Luxury Asset didn't claim the title in itself or was purporting to sell only such title as it or Thompson may have had. Specifically, the court found,

> The surrounding factual circumstances created by the conduct of this pawnbroker Luxury Asset and the information received by [Mr. Mortenson] would lead a reasonable person to believe that the vehicle being sold was not in Luxury Asset's name[;] rather the vehicle was in the name of the person in whose name the vehicle was registered and whose name was on the vehicle Bill of Sale. The fact that Luxury Asset had a Power of Attorney is further evidence that Mr. Mortenson should have had reason to know that Luxury Asset did not own the property and that the title was in the name of the owner, Ms. Thompson. The fact that Luxury Asset did not move the vehicle to Colorado further supports the Court's ruling. The kind of knowledge assumed ordinarily in a private sale is not present in a pawnbroker sale. As such, the Court finds in favor of Luxury Asset that there were sufficient circumstances which gave Mr. Mortenson reason to know that Luxury Asset was

5

> purporting to sell only such right or title as it
> or Ms. Thompson had.

The court accordingly entered judgment in favor of Luxury Asset.

## II.    Law of the Case

¶ 13     As a preliminary matter, plaintiffs challenge the validity of the decision in *Hagerty I*, asserting that (1) the division improperly construed section 4-2-312(2) and the corresponding comment 5 from the Uniform Commercial Code and (2) the division improperly considered evidence and facts not presented to the trial court or on appeal.  We decline to consider either contention.

¶ 14     The *Hagerty I* division already addressed, in a thorough, published opinion, the proper interpretation of section 4-2-312(2) and comment 5.  *See Hagerty I*, ¶¶ 22-30.  Because we see no reason to reopen what was already decided, we decline to address plaintiffs' arguments on that issue.  *See Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2021 COA 114, ¶ 23 (the law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided" (quoting *People v. Morehead*, 2019 CO 48, ¶ 10)); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (although courts have the power to revisit their

6

prior decisions, they "should be loathe to do so in the absence of extraordinary circumstances," such as where the earlier decision was clearly erroneous and would work a manifest injustice); *see also Simpson v. Yale Invs., Inc.*, 886 P.2d 689, 699 (Colo. 1994) ("When a case is remanded to the trial court and subsequently appealed, the reviewing court will consider only those issues arising after the remand and whether the trial court complied with the order of remand.").

¶ 15    We also decline to consider whether the *Hagerty I* division addressed matters not properly preserved in the trial court or presented in the appeal. The *Hagerty I* division rejected that argument when it denied plaintiffs' petition for reconsideration raising the argument. And even assuming we could review that argument again in this subsequent appeal, we decline to do so. *See Owners Ins. Co.*, ¶ 23; *Christianson*, 486 U.S. at 817.

III.    Exclusion of the Warranty of Title by Circumstances

¶ 16    In the alternative, plaintiffs contend that the trial court erred by finding that the circumstances of the transaction were sufficient to exclude the section 4-2-312(2) warranty of title. Specifically, plaintiffs assert that (1) the trial court didn't comply with the

mandate from *Hagerty I* and (2) the evidence doesn't support the court's ultimate finding. We address each contention in turn.

### A. Compliance with the Mandate

¶ 17 Plaintiffs first contend that the trial court failed to follow the *Hagerty I* division's mandate to assess all of the circumstances surrounding the transaction. Instead, plaintiffs argue, the trial court relied solely on Luxury Asset's status as a pawnbroker and ignored the critical fact that Thompson had endorsed the title of the car to Luxury Asset. We disagree.

¶ 18 Under the mandate rule, an appellate court's conclusions on the issues presented to it, as well as the rulings logically necessary to sustain those conclusions, become the law of the case, which a trial court must follow on remand. *Owners Ins. Co.,* ¶ 24. We review de novo whether a trial court complied with the mandate on remand. *Thompson v. Catlin Ins. Co. (UK)*, 2018 CO 95, ¶ 20.

¶ 19 The mandate from *Hagerty I* tasked the trial court with determining "whether the circumstances gave Mortenson reason to know that Luxury Asset did not claim title in itself or that Luxury Asset purported to sell only such title as it or a third party may have." *Hagerty I,* ¶ 31. The division held that the fact that Luxury

Asset is a pawnbroker is insufficient, by itself, to establish that "Mortenson had reason to know that the sale of the Rolls Royce to him for $127,000 was so out of the ordinary commercial course that its peculiar character should have been immediately apparent to him." *Id.* at ¶ 24. The division noted, however, that this fact, in combination with other evidence, could support such a finding. *Id.* Ultimately, the division cited evidence that could support a finding either way on this issue, and it remanded the case to the trial court to resolve the question after a trial. *See id.* at ¶¶ 30-32.

¶ 20 We conclude that the trial court complied with this mandate.

¶ 21 While the trial court noted that Luxury Asset is a pawnbroker, that wasn't the sole factor upon which it based its finding that the circumstances of the transaction were sufficient to exclude the statutory warranty of title. The court specifically stated that it had also considered "the conduct of . . . Luxury Asset"; "the information received by [Mortenson]," including that the car was registered to Thompson and that her name was on the bill of sale; "[t]he fact that Luxury Asset had a Power of Attorney"; and "[t]he fact that Luxury Asset did not move the vehicle to Colorado."

9

¶ 22    Moreover, nothing in the *Hagerty I* division's opinion indicates that any evidence regarding Thompson's endorsement of the title compels a finding in plaintiffs' favor.  While the division noted that no documents in the summary judgment record before it "showed that the title was endorsed or transferred to Luxury Asset," that was only one of the many facts the division cited in identifying a genuine dispute of material fact.  *Hagerty I*, ¶ 25.  Plaintiffs argue that the evidence at trial revealed that the title was, in fact, endorsed to Luxury Asset.  They cite evidence that Thompson endorsed the title in blank before handing it over to Luxury Asset, Luxury Asset held onto the title until it verified that Thompson had failed to pay the loan and it negotiated the sale with Mortenson, and the Luxury Asset representative took the title to the DMV to transfer title to Mortenson.  But Luxury Asset's act of holding onto the endorsed title until the car was resold doesn't necessarily mean that the title transferred from Thompson to Luxury Asset and then from Luxury Asset to Mortenson.  Yet even if it did, and Luxury Asset was temporarily the titled car owner, that doesn't undermine the trial court's finding that the circumstances of the transaction were

sufficient for Mortenson to know that Luxury Asset was only purporting to sell such title as it had from Thompson.

## B.    Sufficiency of the Evidence

¶ 23    Second, plaintiffs contend that the evidence doesn't support the trial court's finding that the circumstances surrounding the transaction were sufficient exclude the warranty of title under section 4-2-312(2).  We aren't persuaded.

¶ 24    When a trial court enters a judgment after a bench trial, that judgment presents a mixed question of law and fact.  *Frisco Lot 3 LLC v. Giberson Ltd. P'ship*, 2024 COA 125, ¶ 66.  We review the court's legal conclusions de novo.  *Id.*  But we review the court's factual findings for clear error and, thus, will not disturb those findings unless they are not supported by the record.  *Id.*  "If the evidence is conflicting, we may not substitute our own conclusions for those of the trial court merely because there may be credible evidence supporting a different result."  *Id.*

¶ 25    Plaintiffs challenge the trial court's finding by asserting that the court should've afforded more weight to the following facts:

- Luxury Asset complied with all statutory requirements as a pawnbroker, including having Thompson complete a

11

written declaration to verify her ownership of the car and holding the car for a period of time after its purchase. *See generally* § 29-11.9-103, C.R.S. 2024.

- Luxury Asset complied with all other legal requirements of the transaction and provided the required information to law enforcement agencies, which didn't flag any issues with the car.  *See* § 29-11.9-103(7)(a).

- Luxury Asset followed the practice, apparently used by the used car dealers with whom Mortenson had worked in the past, of leaving the car titled in the previous owner's name but having the owner endorse the back side of the title.

- The sale of the car "went according to plan."

¶ 26    These facts may have supported a contrary finding.  But just like the facts in the summary judgment record in *Hagerty I*, they don't compel a contrary finding as a matter of law.  *See Hagerty I*, ¶ 31.  And as an appellate court, we aren't in a position to reweigh the trial court's factual finding.  *See Frisco Lot 3*, ¶ 66; *see also Korean New Life Methodist Church v. Korean Methodist Church of the Ams.*, 2020 COA 20, ¶ 51 ("[A]n appellate court will neither weigh

12

the evidence nor appraise the credibility of witnesses . . . ." (quoting *Van Cise, Phillips & Goldberg v. Jelen*, 593 P.2d 973, 974 (Colo. 1979)) (alteration in original).

¶ 27     Plaintiffs rely in particular on the fact that Thompson had endorsed the title in blank.  But, as explained above, the evidence on that issue doesn't entitle plaintiffs to judgment as a matter of law.  And many other facts support the peculiarity of the transaction, such as the following:

- Mortenson knew that Luxury Asset was a pawnbroker, that the Rolls Royce secured a loan from Luxury Asset to Thompson, and that Thompson failed to make the required payments on the loan.

- Mortenson knew that the title Luxury Asset provided to the DMV in Nevada was in Thompson's name (not Luxury Asset's) and was issued in South Carolina (not Colorado).

- Mortenson knew that Thompson was listed as the seller on the bill of sale.

- Mortenson knew that Luxury Asset was signing the sale documents on Thompson's behalf under a power of attorney.

- The car was never moved to Colorado. Instead, Mortenson paid to ship it directly from Georgia to his home in Nevada.

- Before the sale, Mortenson indicated to Luxury Asset that he had contacted a Rolls Royce dealer about obtaining a second key, and the dealer said there was something wrong with the VIN number because it couldn't be located in its system. Mortenson also indicated that he planned to check with another Rolls Royce dealer the following day to try to confirm the VIN number. Yet, as the trial court noted, "[t]here is no evidence that Mr. Mortenson checked with another Rolls [Royce] dealer to confirm the VIN."

¶ 28    Based on these facts, we conclude that the trial court didn't clearly err by finding that the circumstances surrounding the sale were sufficient for Mortenson to know that Luxury Asset didn't claim the title in itself or was purporting to sell only such title as it or Thompson may have had.

## IV.   Disposition

¶ 29    The judgment is affirmed.

JUDGE FOX and JUDGE LUM concur.